KIMBALL, Appellant, v. CITY OF SIOUX FALLS, et al, Respondents

(20 N. W.2d 873.)

(File No. 8794. Opinion filed December 1, 1945.)

**Parliman & Parliman** and **Danforth & Danforth,** all of Sioux Falls, for Appellant.

**Roy D. Burns,** of Sioux Falls, for Respondent City of Sioux Falls.

**Bailey, Voorhees, Woods· & Fuller,** of Sioux Falls, for Respondents other than City of Sioux Falls.

SICKEL, J.  This is an action brought by plaintiff to recover damages for what she claims was the wrongful death of Harold A. Kimball, deceased.  On May 26, 1943, decedent rode a motorcycle out of the rear end of a basement garage, up a concrete ramp, and out to the alley.  Instead of turning and riding down the alley he rode across it, and off an eight foot embankment, landing on the adjoining lot below.  Decedent died as a result of injuries received in the fall.  This action was brought against the City of Sioux Falls, the owners of the lots on which decedent fell, and their agent. The case was tried to a jury.  At the close of plaintiff's evidence defendants made motions for directed verdict, which were granted.  Judgment was entered dismissing the action and plaintiff has appealed.

Appellant contends that the court erred in granting the motions for the reason that the evidence was sufficient to justify the jury in finding that the defendants were all negligent, and that such negligence was the proximate cause of the death of Kimball.  This contention is based on the existence of an eight foot depression on the lots east of the alley, and on the absence of a guard-rail or other barrier at the east alley line.  She claims that these facts are sufficient to prove the negligence of the lot owners. and of the city.

The general rule as to the duty of the owner of lots adjacent to a public way was stated in the English case of Hardcastle v. South Yorkshire Railway, 4 Hurl. and Nov. 67. The rule stated in that case was quoted with approval in Sanders v. Reister, 1 Dak. 1.51, Reprint p. 145, 46 N. W. 680, as follows:

"When an excavation is made adjoining to a public way, so that a person walking upon it might, by making a false step, or being affected with sudden giddiness, or, in the case of a horse or carriage way, might, by the sudden starting of a horse, be thrown into the excavation, it is reasonable that the person making such excavation should be liable for the consequences."

The rule is also stated in Restatement, Torts, § 368, as follows:

"A possessor of land who creates or maintains thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact therewith while traveling with reasonable care upon the highway, is subject to liability for bodily harm thereby caused to them."

Comment a under the section referred to above states:

"In order that the rule stated in this Section shall apply, the condition must not only be one which a reasonable man would recognize as involving an unreasonable risk to properly conducted traffic upon an adjacent highway, but also it must have been created by the possessor or his predecessor in possession or by someone acting on their behalf or by their permission after the highway has been dedicated."

See also 25 Am. Jur., Highways, §§ 364, 530.

█ It will be noted that the rule fixing liability on the owner of the adjoining land applies only in case he has created the excavation or other artificial condition which caused or contributed to the injury. The rule of liability does not apply to a condition created by others for whom the lot owner is not responsible and over whom he has no control.

Here there is an entire absence of any evidence to show that an excavation was made on the adjacent lots by any one. There is no evidence to show how the embankment was created. Photographs and other evidence in the case show the lot levels on both sides of the alley, and rather indicate that the depression was caused by the establishment

of the alley grade at a height several feet above the level of the land on both sides of it.

Assuming, but not deciding, that this embankment was sufficiently near the alley to make it probable that persons traveling the public way might be hurt, the question then is whether it was the duty of the owners of the lots to remove the condition or to properly guard it.

Section 368 of the Restatement referred to above, Subdivision b, states:

"If a highway is established in close contiguity to an excavation or other dangerous condition upon the possessor's land, whether constructed by him or otherwise created, the duty to guard such dangerous condition is upon those who are charged with the duty of maintaining the highway in a reasonably safe condition for travel and not upon the possessor of land upon which the dangerous condition is situate."

Subdivision e of the same section states:

"The rule stated in this Section does not impose any duty upon a possessor of land to remove or guard dangerous conditions which existed at the time the highway was dedicated."

Illustration Number 4 under this section reads as follows:

4. A is the possessor of land upon which there is a deep quarry. A highway is laid out and established running along the edge of this existing quarry. It is the duty of the municipality maintaining the highway for public travel, and not A, to erect and maintain fences or other guards to protect travelers upon the highway."

In the absence of evidence to show that an excavation was made on the adjacent lots or that the dangerous condition of the alley and adjacent property, if it was such, was created by the owners of adjoining lots, there is no basis for imposing upon such lot owners the legal obligation to maintain a guard at the lot line.

The next question is whether it was the duty of the city, under the circumstances of this case, to maintain

a guard or barrier at the east line of the alley where the accident occurred. The rule as stated in Briglia v. City of St. Paul, 134 Minn. 97, 158 N. W. 794, 795, L. R. A. 1916F, 1216, is:

"It is the duty of the city to use ordinary care to keep its streets in safe condition for travel. The city is not, as a rule, bound to make safe for travel the area outside of a public street, nor to fence or erect barriers to prevent travelers from straying off the street to adjoining land upon which there may be dangerous places; but it is bound to provide such guards where the street itself is unsafe for travel by reason of the close proximity of excavations, embankments, deep water, or other pitfalls or dangers."

In the case of City of Dallas v. Maxwell, Tex. Com. App., 248 S. W. 667, 670, 27 A. L. R. 927, the court stated the rule thus:

"The general rule is that a municipality is charged with the duty of exercising ordinary care to so construct and maintain its public highways as to render them reasonably safe for ordinary travel."

In the Maxwell case the court said further that in order to hold the city liable:

"* * * the evidence should warrant the conclusion that in the ordinary use of the street by motor vehicles some injury might reasonably be foreseen as a result of the unguarded ravine. * * * It is quite generally held that the duty to construct and maintain streets and roads so as to render them reasonably safe for ordinary travel excludes liability for those consequences which arise from unusual and extraordinary occurrences. These latter are held not reasonably to be anticipated or foreseen, and therefore no legal duty is imposed to guard against them. * * * And such condition, to come within the purview of reasonable foresight, need not necessarily be confined to the street itself, but may arise by reason of its proximity to the street, which would render it not improbable that it would result in injury to those using the street in the ordinary manner and while exercising due care."

The above rules are supported by the great weight of judicial authority. Annotations 27 A. L. R. 942 and 86 A. L. R. 1405; 25 Am. Jur., Highways, § 533.

■ When a motor driven vehicle becomes defective or unmanageable, or has gotten out of the control of the driver, or when such vehicle is driven recklessly, or when the driver becomes negligent, and an accident results which was not brought about by some defects in the condition of the highway, such accident ·is not an incident to ordinary travel, does not happen as a result of the ordinary use of the highways, but is classed as an unusual and extraordinary occurrence. Briglia v. City of St. Paul, supra; City of Dallas v. Maxwell, supra; Annotation 27 A. L. R. 942 supplemented in 86 A. L. R. 1405; 25 Am. Jur., Highways, § 533.

■ The question here is whether the alley was reasonably safe for ordinary travel, and whether the injury to Kimball might reasonably have been foreseen, or whether the accident was an unusual and extraordinary occurrence. The garage is located in the basement of a building facing Main Avenue, and extending back almost to the alley. This alley is sixteen feet wide, paved with cobblestones and has a concrete curb at the east alley line. This curb is four or five inches in width and rises about three inches above the level of the pavement. East of this curb on Lots 17 and 18 is a two and one-half foot dirt shoulder. At this point there is a declivity to the lot level, which is about eight feet below the shoulder. There was no fence or other guard or barrier at the east alley line. The garage has an alley entrance and exit. The exit is on the south side of the back end of the garage. The garage floor is about three feet below the alley level. The concrete driveway from the floor of the garage to the alley is eleven feet long, measured on the incline, and it is partly inside and partly outside the garage. The only eye witness at this event was an employee in the garage. He was standing in the northeast part of the garage when it happened. Decedent moved the motorcycle westward toward the center of the garage floor, got on it, sat in the seat with his hands on the handlebars and his feet on the floor. He started the motor and shoved it toward the east

end of the garage in the direction of the exit. Then the motor started and the motorcycle "gained speed in a hurry and just went out of the south door on the east side at great speed and went over the curb on the alley there." The motorcycle increased in speed from the time it was put in gear and until it went off the alley. In leaving the garage decedent came along the north side of the garage and then curved or swerved to the south toward the "out" door of the garage. The driver went toward the north edge of that door or close to it and it looked as though he leaned to the right in order to miss the door, because he was awfully close to it. That was about the time that the motorcycle increased speed. It did not go directly across the alley. It looked as though he was trying to turn south. The motorcycle went up the incline under its own power. The evidence in this case shows that the accident occurred in the business section of Sioux Falls between 12:30 and 12:40 P. M. Deceased had worked in the garage as parts manager most of the time for nine years. He was familiar with the conditions at the rear end of the garage and in the alley and must have known the condition of the lots opposite the garage. He had driven automobiles in and out of the garage many times. Decedent never owned a motorcycle. His wife never saw him ride one and never heard of him riding one. His brother had seen him ride a motorcycle eleven or twelve years before the accident. There is no evidence to show that the declivity on the adjoining lots, or any hazard, defect or abnormal condition of the alley, intervened or in any way increased the risk of driving out of the garage in the ordinary and usual manner. The only conclusion possible under the evidence is that decedent lost control of the motorcycle, either because of inexperience as a rider of motorcycles generally, or of that one in particular, or because of some mechanical defect in the motorcycle. The incident was, therefore, an unusual and extraordinary occurrence which the city was not expected to anticipate or to guard against.

These conclusions dispose of other assignments relating to proximate cause, contributory negligence, presumption of due care, and the effect of the city ordinance.

The judgment of the circuit court is affirmed.

ROBERTS and RUDOLPH, JJ., and HAYES, Circuit Judge, concur.

SMITH, P.J., not sitting.

HAYES, Circuit Judge sitting for POLLEY, J.