#24105-a-ZINTER, Justice
**2008 SD _____**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA
* * * *

DEAN HOHM and JEAN HOHM, as Guardians
ad Litem and Conservators for ADAM HOHM,                    Plaintiffs and Appellees,

    v.

CITY OF RAPID CITY, a Municipal Corporation,               Defendant, Third Party
                                                         Plaintiff and Appellant,

    v.

CHARISSA J. HITCHCOCK,                                     Third Party Defendant.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JANINE M. KERN
Judge

* * * *

STEVEN J. OBERG, THOMAS G. FRITZ
and CATHERINE M. SABERS of
Lynn, Jackson, Shultz & Lebrun                             Attorneys for plaintiffs
Rapid City, South Dakota                                   and appellees.

JOHN K. NOONEY of
Thomas, Nooney, Braun, Solay & Bernard
Rapid City, South Dakota                                   Attorneys for appellant.

GREGORY A. EISELAND of
Johnson, Eiseland Law Firm                                 Attorneys for third party
Rapid City, South Dakota                                   defendant.

* * * *

ARGUED
MAY 22, 2007

OPINION FILED _____

#24105

ZINTER, Justice

[¶1.]      This case arises out of a one-car accident in a city park in Rapid City, South Dakota (the City). Adam Hohm (Adam) was severely injured when the car in which he was a passenger skidded off a street in the park and landed upside down in a nearby canal. Adam's parents, Dean and Jean Hohm (Hohms), acting as Adam's guardians and conservators, brought suit against the City alleging breach of various duties relating to streets. The City filed a series of motions to dismiss on the basis that it owed no duty to Adam. All of the City's motions were denied and a jury entered a verdict for Hohms. The City appeals. Although we conclude that cities no longer owe the *common-law* duty applied by the circuit court, we apply our ruling prospectively and affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

[¶2.]      Between nine and ten p.m. on December 27, 2000, sixteen-year-old Charissa Hitchcock (Charissa) was driving her car on a slippery, snow-covered street through Canyon Lake Park in Rapid City. Adam, also age sixteen, was riding as a passenger in the car along with another teenage passenger. As Charissa drove through the park, she came to a sharp curve in the road and lost control of her vehicle. The car skidded off the street and landed upside down in a nearby canal. Charissa and the other passenger were quickly rescued from the vehicle, but Adam was trapped underwater in the car and was deprived of oxygen for a period of time. Adam suffered severe brain damage as a result of the accident.

[¶3.]      Hohms sued the City claiming violation of duties regarding the construction and maintenance of streets, the erection of guards, and the posting of signs warning of known dangers. The City moved for summary judgment, directed

verdict, JNOV, and a new trial, all on the basis that it owed no duty to Adam. The City's motions were denied and, after a jury trial, a verdict was entered in favor of Hohms. The City appeals claiming that the trial court erred in denying its motions because it owed no duty to Adam. The existence of a duty in a negligence action is a question of law subject to de novo review by this Court. *State Auto Ins. Companies v. B.N.C.*, 2005 SD 89, ¶ 20, 702 NW2d 379, 386.

DECISION

[¶4.] One of the elements of a negligence claim is a duty on the part of the defendant. *Id.* The trial court concluded that the City owed Adam common-law duties to construct and maintain its streets in a reasonably safe manner and to erect guards or other barriers against dangerous conditions. The trial court further concluded that the City had a statutory duty under SDCL 31-28-6[1] to erect signs warning of known dangers. The City first argues that any common-law duties it may have owed were extinguished in 1915 and 1939 by the enactment of statutes regulating the duty of cities, towns, counties, and townships regarding the construction and maintenance of streets and highways. This argument requires

---

1.  SDCL 31-28-6 provides:

    > The public board or officer whose duty it is to repair or maintain any public highway shall erect and maintain at points in conformity with standard uniform traffic control practices on each side of any sharp turn, blind crossing, or other point of danger on such highway, except railway crossings marked as required in § 31-28-7, a substantial and conspicuous warning sign, which sign shall be on the right-hand side of the highway approaching such point of danger. A violation of this section is a Class 1 misdemeanor.

analysis of the development of the law of county, township, and municipal liability for negligence relating to streets and highways.

[¶5.] The duties of counties and municipalities as to highways[2] were first addressed by this Court in *Bailey v. Lawrence County*, 5 SD 393, 59 NW 219 (1894), a case involving damages caused by a defective bridge constructed by a county. The Court held in *Bailey* that, while municipalities were liable at common law for injuries resulting from defects in highways, counties were not liable in such cases in the absence of legislation making them liable. In explaining this difference, the Court drew the following distinction between counties and municipalities:

> The ground upon which it is held that *counties are not liable* for damages in actions of this character is that they are involuntary political divisions of the state, created for governmental purposes, and are organized without regard to the consent or dissent of the inhabitants; and the theory upon which *municipal corporations, proper, are held liable* in such cases, is that they are voluntary associations created and organized at the solicitation of, and with the free consent of, the inhabitants, under the laws of the state, and that the benefits accruing to the people by such incorporation compensate them for the liability.

*Id.* at 399, 59 NW at 221 (emphasis added).

[¶6.] The Court based this distinction on principles of sovereign immunity that, in the common law, protected counties and townships, as political divisions of the State, from liability for neglect of duties regarding highways unless an action

---

2. "Highway" is a generic term in South Dakota law defined to include "[e]very way or place of whatever nature open to the public, as a matter of right, for purposes of vehicular travel[.]" SDCL 31-1-1. "Highways" include city streets. *See* City of Belle Fourche v. Dittman, 325 NW2d 309, 313 (SD 1982). *See also* SDCL 31-1-4 ("highways" of the State include streets and alleys within the limits of municipal corporations).

was expressly authorized by statute. *See id.* (citing Barnett v. Contra Costa Co., 67 Cal 77, 7 Pac 177 (1885)). The Court continued to utilize principles of sovereign immunity as a basis for distinguishing between common-law municipal liability and county and township liability in a number of subsequent cases. *See* Norberg v. Hagna, 46 SD 568, 572-73, 195 NW 438, 440 (1923)(municipal corporations are liable for damages caused by negligence when their duties are ministerial and are liable for negligence in permitting obstructions or defects in streets and highways); Jensen v. Juul, 66 SD 1, 5, 278 NW 6, 8 (1938)(counties, townships and school districts classified as quasi public corporations are instrumentalities of the State for the purpose of carrying into effect the functions of government and are not liable for damages caused by negligent performance of such duties unless a cause of action is expressly given by statute); Williams v. Wessington Tp., 70 SD 75, 77, 14 NW2d 493, 494 (1944)(counties and townships are political subdivisions of the State or quasi corporations exercising part of the State's sovereign power and are not liable in the absence of a statute imposing liability for injuries caused by defective highways, while municipalities are liable for failure to use due care to keep streets in reasonably safe condition for public travel); Conway v. Humbert, 82 SD 317, 319, 145 NW2d 524, 526 (1966)(a municipal corporation has both governmental and corporate, private or proprietary powers and, when using governmental powers, it is not liable for tort because it is an agent of the State partaking of its sovereignty, yet it is liable for negligence when exercising its corporate or private powers); Bucholz v. City of Sioux Falls, 77 SD 322, 328, 91 NW2d 606, 610 (1958)(a municipality engaged in construction, repair or maintenance of streets and sidewalks acts in a

corporate or proprietary capacity and is liable for injuries resulting from the negligence of its officers and agents).[3]

[¶7.]     Consistent with the holdings distinguishing county and municipal liability, this Court handed down a long line of decisions recognizing a common-law duty on the part of municipalities to keep, repair or maintain streets and sidewalks in a reasonably safe condition for public travel.  *See* Bohl v. City of Dell Rapids, 15 SD 619, 91 NW 315 (1902); Jones v. City of Sioux Falls, 18 SD 477, 101 NW 43 (1904); Fritz v. City of Watertown, 21 SD 280, 111 NW 630 (1907); Smith v. City of Yankton, 23 SD 352, 121 NW 848 (1909); Connell v. City of Canton, 24 SD 572, 124 NW 839 (1910); Rowe v. Richards, 32 SD 66, 142 NW 664 (1913), *overruled on other grounds,* Ulvig v. McKennan Hospital, 56 SD 509, 229 NW 383 (1930); Keen v. City of Mitchell, 37 SD 247, 157 NW 1049 (1916); Gellenbeck v. City of Mobridge, 40 SD 157, 166 NW 631 (1918); Ellwein v. Town of Roscoe, 42 SD 298, 174 NW 748 (1919); Stewart v. City of Watertown, 43 SD 489, 180 NW 945 (1921); Schuler v. City of Mobridge, 44 SD 488, 184 NW 281 (1921); *Norberg, supra*; Doolin v. City of Winner, 48 SD 400, 204 NW 899 (1925); Usletten v. City of Brookings, 59 SD 477, 240 NW 851 (1932); Drake v. City of Mobridge, 60 SD 79, 243 NW 429 (1932); Hermandson

---

3.     Over the years, the Court also noted some confusion in its decisions on sovereign immunity as it related to municipalities.  *See Bucholz*, 77 SD at 326, 91 NW2d at 608 (noting that while the distinction between governmental and corporate or proprietary functions is recognized in nearly all jurisdictions in determining the tort liability of municipalities, difficulty often arises in application of the rule and holdings have not been uniform and consistent); *Conway*, 82 SD at 326, 145 NW2d at 530 (Homeyer, J., specially concurring)(noting that the decisions of this Court attempting to distinguish between proprietary and governmental functions and predicating liability and nonliability therein are not clear and the distinction in many instances is without logic and confusing).

v. City of Canton, 60 SD 367, 244 NW 525 (1932); Fenton v. Ackerman, 66 SD 465, 285 NW 516 (1939); *Williams, supra*; Kimball v. City of Sioux Falls, 71 SD 35, 20 NW2d 873 (1945); McCleod v. Tri-State Milling Co., 71 SD 362, 24 NW2d 485 (1946); Gurney v. Rapid City, 74 SD 194, 50 NW2d 360 (1951); Poppen v. City of Watertown, 74 SD 402, 53 NW2d 616 (1952); *Bucholz, supra*; Rapid City v. First Nat'l Bank of Black Hills, 79 SD 38, 107 NW2d 693 (1961).[4]

[¶8.]     In contrast with the common-law duty of municipalities, the Court held that county and township duties as to highway maintenance were statutory.  For example, in the early case of *Hanigan v. Minnehaha County*, 47 SD 606, 609, 201 NW 522, 523 (1924), this Court observed as to county liability that:

> Prior to the adoption of chapter 210, Laws 1915, which chapter was the original source of said sections 8589 and 8590, it was the settled law of this jurisdiction, following the rule of the common law, that a county was not liable for damages caused by the neglect of its officers to keep in repair a bridge upon a public highway because there was no express statute creating such a liability.  That doctrine was enunciated in [*Bailey, supra*.]

*See also Williams, supra* (stating, before 1915, there was no statute imposing liability on townships-which are generally treated the same as counties-but, by chapter 210, Laws 1915, townships (and counties) were made liable under certain circumstances for injuries sustained because of defects in highways).

---

4.     As part of the common-law duty to keep streets and sidewalks reasonably safe, some of these cases recognized duties to *construct* streets and sidewalks so that they were reasonably safe (*see Smith, supra*), to *guard* against dangers (*see Rowe, supra*) and to provide *warnings* of defects (*see Drake, supra*).

[¶9.]     This 1915 act, referenced in *Hanigan, supra* and *Williams, supra,* was the first legislation imposing liability for negligence in highway maintenance.  It explicitly applied not only to townships and counties, but also to towns and cities and broadly provided:

> § 1.  Guards Erected - Repairs made. It shall be the duty of the road supervisors of any *township, town or city*, and the county commissioners *of any county* not fully organized into civil townships, to keep all public roads and highways, culverts and bridges in such condition as to render them safe and passable and free from danger of accidents or injury to persons or property, while in the lawful use thereof, and in case such roads, highways, culverts or bridges shall become in whole or in part destroyed or out of repair by reason of floods, fires or any other cause, to such an extent as to endanger the safety of public travel, it shall be their duty upon receiving notice thereof to cause to be erected, for the protection of travel and public safety, within twenty-four hours thereafter, substantial guards over such defects, or across such roads or highways, of sufficient height, width and strength to warn and guard the public from accident or injury to the person or property thereof, and it shall also be their duty to repair the same within a reasonable time thereafter.  It shall also be the duty of any such supervisors to protect any abandoned public road or highway with substantial guards as provided in this act.
>
> § 2.  Penalty. Any such officer or officers, who shall violate the provisions of this act shall be guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than ten ($10.00) dollars, nor more than fifty ($50.00) dollars, or by imprisonment in the county jail for a term of not less than five (5) days, nor more than ten (10) days, or both such fine and imprisonment.
>
> § 3.  Damages. Any person shall have a cause of action against such *city, town, township or county* for injury to persons or property sustained by reason of any violation of the provisions of this act.
>
> § 4.  All acts and parts of acts in conflict with this act are hereby repealed.

1915 SDSessL ch 210 (emphasis added).

[¶10.]     The 1915 legislation went through various changes and modifications over the following years. It was first amended and codified at sections 8589 and 8590 of the Revised Code of 1919. Those sections retained the references to counties, townships, cities and towns and further retained broad duties relating to highways:

> § 8589. Guards Erected-Repairs. It shall be the duty of the governing body of *every city, incorporated town and organized civil township*, and of the *board of county commissioners* in territory not included in any such city, town or township, to keep the public highways, culverts and bridges in such condition as to render them safe, passable and free from danger of accident or injury to persons or property while in the lawful use thereof; and in case any highway, culvert or bridge shall become, in whole or in part, destroyed or out of repair by reason of floods, fires or other cause to such an extent as to endanger the safety of public travel, it shall be the duty of such governing body or board, upon receiving notice thereof, to cause to be erected for the protection of travel and public safety, within twenty-four hours thereafter, substantial guards over such defect or across such highway of sufficient height, width and strength to warn and guard the public from accident or injury, and to repair the same within a reasonable time thereafter. It shall also be the duty of such governing body or board to guard any abandoned public highway, culvert or bridge as provided in this article.
>
> § 8590. Violation-Penalty-Damages. Any officer who shall violate the provisions of the preceding section shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than ten nor more than fifty dollars or by imprisonment in the county jail not less than five nor more than ten days, or by both such fine and imprisonment; and any person who shall sustain injury to person or property by reason of any violation of such section shall have a cause of action

> against *the city, town, township or county* as the case may be.

SD Rev Code 1919, § 8589, § 8590 (emphasis added).

[¶11.]     In 1939, these two sections of the Revised Code of 1919 were replaced by SDC § 28.0913. That act retained the reference to counties, townships, cities and towns, but limited those entities' duties as follows:

> In case any highway, culvert, or bridge shall become in whole or in part destroyed or out of repair by reason of floods, fires, or other cause to such an extent as to endanger the safety of public travel, it shall be the duty of the governing body or board under statutory duty to maintain such highway, culvert, or bridge upon receiving notice thereof to cause to be erected for the protection of travel and public safety, within twenty-four hours thereafter, substantial guards over such defect or across such highway of sufficient height, width, and strength to guard the public from accident or injury and to repair the same within a reasonable time thereafter. It shall also be the duty of such governing body or board to guard any abandoned public highway, culvert, or bridge in like manner.
>
> Any person who shall sustain injury to person or property by reason of any violation of this section shall have a cause of action against the *county, township, city, or town* as the case may be for such damages as he may have sustained.

1939 SDC § 28.0913 (emphasis added).

[¶12.]     The 1939 statutory changes were significant in two respects. First, they removed the broad duty imposed by § 8589 to keep public highways safe and free from danger, retaining only the limited duty to guard and repair highways that were destroyed or out of repair. *See* Reaney v. Union County, 69 SD 392, 395, 10 NW2d 762, 763 (1943). In *Reaney,* the county argued that these changes indicated an intention to narrow the scope of its liability for negligence in highway

maintenance. This Court agreed holding: "The broad general duty to maintain a reasonably safe highway has been eliminated, and the specific duty to guard and repair a damaged or destroyed highway has been retained. . . . The conclusion is unavoidable that the liability of the county has been abridged by revision." *Id*. at 396-97, 10 NW2d at 764. This conclusion was reaffirmed in *Dohrman v. Lawrence County*, 82 SD 207, 210, 143 NW2d 865, 867 (1966)(stating that in adopting the 1939 revision, the legislature curtailed the statutory duty to render highways safe and it is now established that a county's obligation is confined to the specific duty to guard and repair a damaged or destroyed highway). To the extent these statutes were inconsistent with the common law, the common law was abrogated. This Court stated such revisions:

> [I]mpliedly eliminated common law negligence in keeping and maintaining county roads as the base for a cause of action against [a] County. If in the spirit of so-called enlightened public policy changes in the governing statute are again deemed appropriate, we believe the legislature will be cognizant of the need and will not remain insensitive to its responsibility.

*Id*. at 212, 143 NW2d at 868.

[¶13.]    The development of these statutes abrogating the common law and imposing statutory liability for negligence in highway maintenance is also important because, as emphasized in the text of all statutes quoted above, the change applied not only to counties and townships, *but also to cities and towns*, a point not previously recognized in our jurisprudence. Relying on both changes, the City argues that the legislative inclusion of cities and towns in the statutes abrogated its common-law duties as to highway maintenance and subjected it to the

new, limited statutory liability identical to that of counties and townships; *i.e.,* that

the narrowing of statutory duties in 1939, as recognized in *Reaney, supra* and

*Dohrman, supra*, also applied to municipalities. If applicable to municipalities, the

current successor to 1939 SDC § 28.0913, SDCL 31-32-10, limits liability like the

1939 legislation as follows:

> If any highway, culvert, or bridge is damaged by flood, fire
> or other cause, to the extent that it endangers the safety
> of public travel, the governing body responsible for the
> maintenance of such highway, culvert, or bridge, shall
> within forty-eight hours of receiving notice of such
> danger, erect guards over such defect or across such
> highway of sufficient height, width, and strength to guard
> the public from accident or injury and shall repair the
> damage or provide an alternative means of crossing
> within a reasonable time after receiving notice of the
> danger. The governing body shall erect a similar guard
> across any abandoned public highway, culvert, or bridge.
> Any officer who violates any of the provisions of this
> section commits a petty offense.

SDCL 31-32-10. Thus, the City contends that under the 1915, 1939, and current

version of these statutes, its common-law duty was abrogated and its statutory duty

is the same as counties and townships. The City further contends that, under

SDCL 31-32-10 and the facts of this case, it owed no duty at all because the Rapid

City street was not "damaged" or "abandoned" as required by that statute: rather,

allegedly the street was defectively constructed, maintained, or lacked adequate

warnings.

[¶14.]    These contentions require us to address the effect of changes in

statutes on the common law. There is no question that the common-law doctrine as

set forth in *Bailey* predates any relevant statutory enactments on duties of a

municipality concerning streets. The test for whether a statute overrides a

previously recognized common-law doctrine was established in our first Territorial

Code of 1877:

> The evidence of the common law, including the law
> merchant, is found in the decisions of the tribunals.
>
> In this state the rules of the common law, including the
> rules of the law merchant, are in force, except where they
> conflict with the will of the sovereign power, expressed in
> the manner stated in § 1-1-23.

SDCL 1-1-24 (originally RevCodeTerrDak, Civil Code §§ 5 & 6 (1877)).  One of the

methods of expressing the "will of the sovereign power" in SDCL 1-1-23 (originally

RevCodeTerrDak, Civil Code § 3 (1877)) to override the common law is "[b]y

statutes enacted by the Legislature[.]"  Thus, in case of a conflict, the statute

controls.

[¶15.]          These principles have been reflected in the decisions of this Court.

> As a general precept, common law is in force, except
> where it conflicts with the will of the sovereign power as
> expressed through the constitution, statutory enactments,
> and ordinances.  SDCL 1-1-23, 1-1-24.  S*ee also* McKellips
> v. Mackintosh, 475 NW2d 926, 929 (SD 1991). Where a
> statute is in derogation of common law, it should be
> "liberally construed with a view to effect its objects and to
> promote justice."  SDCL 2-14-12.

State v. Shadbolt, 1999 SD 15, ¶ 13, 590 NW2d 231, 233.  In *Burnett v. Myers*, 42

SD 233, 173 NW 730 (1919), this Court considered whether a common-law cause of

action remained in force despite the enactment of a statutory-based remedy.  In

holding that an analogous common-law cause of action for trespassing livestock did

not survive, this Court adopted the following principles:

> "When a statute revises the whole subject of a former one
> and is clearly designed as a substitute, the former law is
> repealed, although no express terms to that effect are

> used. Hillsborough County v. Manchester, 49 NH 57, 60; Opinion of Justices, 66 NH 629, 668-671, 33 Atl 1076. 'The rule does not rest strictly upon the ground of repeal by implication, but upon the principle that when the Legislature makes a revision of a particular statute, and frames a new statute upon the subject-matter, and from the framework of the act it is apparent that the Legislature designed a complete scheme for this matter, it is a legislative declaration that whatever is embraced in the new law shall prevail, and whatever is excluded is discarded. It is decisive evidence of an intention to prescribe the provisions contained in the later act as the only ones on that subject which shall be obligatory.' Roche v. Jersey City, 40 NJ Law, 257, 262. *The rule is the same when the common law is revised by statute*." State v. Wilson, 43 NH 415, 419, 82 AmDec 163; State v. Morgan, 59 NH 322, 324."

*Id.* at 234, 173 NW at 731 (emphasis added)(quoting Boston Ice Co. v. Boston & M.R.R., 86 A 356, 360 (NH 1913)). The Court's analysis in *Burnett* is instructive here:

> It is true that so far as the substance of the right declared in said chapter [244, Laws of 1907,] is concerned, it is merely declaratory of the common law. But chapter 244 goes further than to merely restate the common-law right; it prescribes the method of procedure to secure the remedy; it assumes to cover the whole subject-matter of damages caused by trespassing animals, including the rules of practice to be followed in such cases. It is clear from the degree of minuteness with which the Legislature went into the whole subject, that the remedy provided was intended to be exclusive, and that it was the intent of the Legislature to repeal any existing provisions of that act.

*Id.* at 234-35, 173 NW at 731 (citations omitted).

[¶16.] Applying these principles to the original 1915 legislation on liability for negligence in highway maintenance, we observe that chapter 210 imposed duties on the road supervisors of "any township, *town or city*," and on county

commissioners to keep highways safe, passable and free from danger; to erect guards over substantial defects; and to complete repairs when such highways were destroyed or fell out of repair. 1915 SDSessL ch 210, § 1 (emphasis added). The act provided criminal penalties for its violation and a civil cause of action for persons injured as a result of noncompliance with its provisions. *Id*. at §§ 2 & 3. Finally, the act expressly provided that all other acts and parts of acts in conflict with it were repealed. *Id*. at § 4.

[¶17.]        Clearly, the detailed provisions of chapter 210 express legislative intent to design a complete scheme of responsibility and liability for highway maintenance such that its requirements should be the only ones that were obligatory. Robinson v. Minnehaha County, 65 SD 628, 277 NW 324 (1938). *Robinson* stated:

> From [chapter 210] there emerges an unmistakable legislative intent *to definitely fix the respective duties of the several subdivisions enumerated* with reference to public safety and travel on the highways, and to provide for the recovery of damages from a particular subdivision occasioning injury through failure to perform the statutory duty assigned to it.

*Id*. at 632, 277 NW at 326 (emphasis added).

[¶18.]        Consequently, chapter 210 did not merely restate the common-law duty of municipalities as to maintenance of streets, it prescribed the new statutory duties for cities, towns, counties and townships, enacted criminal penalties, and created a civil cause of action for violation of those duties. To paraphrase the Court's conclusion in *Burnett*, it is clear from the degree of minuteness with which the legislature went into the whole subject, that the act was intended to be

exclusive, and that it was the intent of the legislature to repeal any other acts or provisions of common law pertaining to the same subject.

[¶19.] Even if we were to determine that some vestige of the common-law liability of municipalities survived the enactment of chapter 210 in 1915, we hold that it was fully abrogated by the 1939 statutory revisions that eliminated the broad duty to maintain reasonably safe highways and confined counties and townships, as well as cities and towns, to the more limited duty to guard and repair highways that are damaged or destroyed.[5] *See* 1939 SDC § 28.0913; *Reaney*, 69 SD at 396-97, 10 NW2d at 764; *Dohrman*, 82 SD at 210, 143 NW2d at 867.

[¶20.] Based upon this history, cities' common-law duties respecting streets were abrogated by these legislative enactments. The duties are now limited by statute, and any language in the decisions of this Court after 1939 recognizing a common-law duty on the part of municipalities with regard to streets or highways is hereby overruled. This would include the language regarding a common-law duty in: *Williams,* 70 SD at 77, 14 NW2d at 494 (citing *Norberg, supra* and *Jensen, supra* for "[t]he general rule . . . that cities and towns are liable for injuries sustained in consequence of their failure to use due care to keep their streets in a reasonably safe condition for public travel."); *Kimball,* 71 SD at 40, 20 NW2d at 875 (quoting City of Dallas v. Maxwell, 248 SW 667, 670 (TexComm'nApp 1923) for the statement that

---

5. The specific language of the 1939 law imposed the duty on "the governing body or board under statutory duty to maintain such highway[.]" 1939 SDC § 28.0913. In 1939, the governing body or board under statutory duty to maintain a city's streets would have been the governing body or board of the municipality. *See* 1939 SDC § 45.0201(94)(municipalities empowered to establish, improve and repair roads, streets, alleys and sidewalks).

"'the general rule is that a municipality is charged with the duty of exercising ordinary care to so construct and maintain its public highways as to render them reasonably safe for ordinary travel'"); *McCleod,* 71 SD at 367, 24 NW2d at 487 (citing *Bohl, supra* and other South Dakota cases holding that "[a] municipal corporation is charged with the duty of keeping its streets and sidewalks in a reasonably safe condition."); *Gurney,* 74 SD at 197, 50 NW2d at 361 (citing *Keen, supra* and other South Dakota cases where this Court applied the rule that it is "[t]he duty of a municipality to keep its streets and sidewalks reasonably safe for the use of the public"); *Poppen,* 74 SD at 404, 53 NW2d at 617 (quoting *Bohl*, 15 SD at 624, 91 NW at 317, for the rule, "'[t]he law does not require that the city shall do more than keep its streets and sidewalks in a reasonably safe condition'"); and *Bucholz,* 77 SD at 329, 91 NW2d at 610 (quoting *Norberg*, 46 SD at 573, 195 NW at 439, referring to the "'law that requires a municipal corporation to keep its streets free from nuisances, and reasonably safe for those who lawfully use them'").[6] Although we tread reluctantly upon these precedents, as observed by Justice Brandeis in his dissenting opinion in *Burnet v. Coronado Oil & Gas Co.*, 285 US

---

6.     Hohms suggest that if the common-law duty is abrogated, we should also abrogate *Orrison v. City of Rapid City*, 76 SD 145, 74 NW2d 489 (1956). *Orrison* involved a suit against a municipality for negligent maintenance of the floor of a dressing room at a city swimming pool. In setting forth the duty of the city, this Court cited various authorities, including one of its prior decisions on street maintenance, in holding that the city had a duty to maintain the floor in a reasonably safe condition. *See id.* at 152, 74 NW2d at 492 (citing *Smith,* 23 SD 352, 121 NW 848). The case before us today is not a swimming pool case, and because the language in *Orrison* was confined to swimming pools and made no reference to streets, we see no need to overrule it. Similarly, we express no opinion today on a city's common-law duty relating to sidewalks or other non-highway matters.

393, 405-06, 52 SCt 443, 447, 76 LEd 815 (1932)(Brandeis, J., dissenting), stare decisis is not an "inexorable command" and is not inflexible. Reconsideration of precedent is appropriate where a shift in position results from intervening development of the law through the growth of judicial doctrine or through further action taken by a legislative body. *See* Patterson v. McLean Credit Union, 491 US 164, 173, 109 SCt 2363, 2370, 105 LEd2d 132 (1989). Such is the case here where comprehensive legislation was enacted following this Court's early decisions recognizing a common-law duty on the part of municipalities and our subsequent decisions regarding municipalities did not discuss the legislation.

[¶21.] Hohms argue that any decision overruling these precedents should be applied prospectively only. Generally, unless a court declares otherwise, a decision has both prospective and retroactive effect. Burgard v. Benedictine Living Communities, 2004 SD 58, ¶ 9, 680 NW2d 296, 299. Courts, however, have inherent power to apply decisions prospectively only. *Id*. In determining whether a decision should be given only prospective effect, courts consider the following factors:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for

> avoiding the injustice or hardship" by a holding of nonretroactivity.

*Id.* ¶ 10, 680 NW2d at 299 (quoting Brown v. John Morrell & Co., 511 NW2d 277, 278 (SD 1994)(quoting Fisher v. Sears, Roebuck & Co., 88 SD 1, 4-5, 214 NW2d 85, 87 (1974)(quoting Chevron Oil Co. v. Huson, 404 US 97, 106, 92 SCt 349, 355, 30 LEd2d 296, 306 (1971)))).

[¶22.]       Today's decision establishes a new principle of law by overruling the above precedents upon which litigants have relied *and* by deciding an issue of first impression whose resolution was not clearly foreshadowed. While it is suggested that our decisions in *Gulbranson v. Flandreau Township*, 458 NW2d 361 (SD 1990) and *Wilson v. Hogan*, 473 NW2d 492 (SD 1991) foretold this decision, we disagree. Neither of those cases addressed the issue in this case, *i.e.*, the effect of the statutes regulating liability for negligence in highway maintenance on the common-law liability of municipalities. In discussing a township's liability in *Gulbranson* and the State's waiver of immunity in *Wilson*, the Court did state that the limited statutory duties remaining under SDCL 31-32-10 apply to "public entit[ies]." *See Gulbranson*, 458 NW2d at 362; *Wilson*, 473 NW2d at 496. Although a "public entity" includes a municipality (*see* SDCL 3-22-2(12)), we decline to view this choice of terminology as foreshadowing a decision that the liability statutes abrogated the common-law liability of municipalities. The common-law liability of municipalities rested on many years of settled precedent and its abrogation could not be so easily foreseen in the simple turn of a phrase.

[¶23.]       We also decline to view the existence of the liability statutes themselves as foreshadowing this decision. *See* Baatz v. Arrow Bar, 426 NW2d 298

(SD 1988); *Brown, supra; Burgard, supra* (resolution of issue foreshadowed by interpretation of existing statutes/statutory construction does not make new law but interprets existing law). Despite the long-standing existence of those statutes, this Court continued to affirm and reaffirm that municipalities had a common-law duty to maintain their streets in a reasonably safe condition. *See Williams, supra; Kimball, supra; McCleod, supra; Gurney, supra; Poppen, supra; Bucholz, supra.* The litigants and trial court were well placed in relying on this settled law. In light of those decisions, the liability statutes could not have foreshadowed today's holding first recognizing the legislative abrogation of the common-law duty. This reliance on settled law also supports prospective application of this decision under the remaining *Chevron Oil* factors, *i.e.*, the merits and demerits of the case and the inequities imposed by retroactive application. *See Burgard,* 2004 SD 58, ¶ 12, 680 NW2d at 301 (noting that the principal rationale for allowing prospective application is the reliance of the parties on the old rule of law). Based upon the foregoing factors, we hold that this decision is prospective only.

[¶24.]    Thus, under our prior cases, we conclude that the trial court did not err in determining that the City had a common-law duty to safely maintain its streets. *See Williams,* 70 SD 75, 14 NW2d 493; *Kimball,* 71 SD 35, 20 NW2d 873 (the cases relied upon by the trial court). Given this conclusion and the fact that a general verdict was entered, we do not address the City's additional arguments that it owed no duty to properly design, construct and maintain streets or to erect guards under SDCL 31-32-10, and that it owed no duty to warn of known dangers under SDCL 31-28-6. *See* Eberle v. Siouxland Packing Co., Inc., 266 NW2d 256, 258 (SD 1978)

(stating that if a general verdict is rendered and the jury could have decided the case on two theories, one proper and one improper, the reviewing court will assume the case was decided on the proper theory).

[¶25.]     Affirmed.

[¶26.]     GILBERTSON, Chief Justice, concurs.

[¶27.]     KONENKAMP, Justice, and MILLER, Retired Justice, concur specially.

[¶28.]     MEIERHENRY, Justice, concurs in result.

[¶29.]     MILLER, Retired Justice, for SABERS, Justice, disqualified.

KONENKAMP, Justice (concurring specially).

[¶30.]     Today we examine for the first time the full extent of a 1939 statute on municipal liability for street maintenance and construction.  We conclude that the Legislature has strictly limited municipal liability for city streets to instances where the city fails to provide guards for an "abandoned" highway or neglects to timely repair or guard a "highway, culvert, or bridge . . . damaged by flood, fire or other cause[.]"  SDCL 31-32-10.

[¶31.]     This is a sharp change in direction.  Almost from the time of statehood, cities have been liable under the common law for negligence in failing to maintain streets in a reasonably safe condition for the traveling public.[7]  Beginning in 1915,

---

7.     This Court has repeatedly recognized the common-law duty of municipalities to maintain streets and sidewalks in a reasonably safe condition.  Bohl v. City of Dell Rapids, 15 SD 619, 91 NW 315 (1902); Jones v. City of Sioux Falls, 18 SD 477, 101 NW 43 (1904); Fritz v. City of Watertown, 21 SD 280, 111 NW 630 (1907); Smith v. City of Yankton, 23 SD 352, 121 NW 848 (1909); Connell v. City of Canton, 24 SD 572, 124 NW 839 (1910); Rowe v. Richards, 32 SD 66, 142 NW 664 (1913), *overruled on other grounds*, Ulvig v.

however, and continuing in 1919, South Dakota "entered upon a new era of highway construction." Hanigan v. Minnehaha County, 47 SD 606, 201 NW 522, 522 (1924). In those years, the Legislature began to enact "comprehensive" laws to divide among government entities responsibility and accountability on the construction and maintenance of highways. *Id.* Counties and townships, previously immune under the common law, were laid open to negligence liability, along with cities and towns, for failure to keep public highways "safe, passable and free from danger from accident or injury to persons or property." Revised Code of 1919, § 8589.

[¶32.] As the Court capably explains here, once having embraced the entire subject of highway liability in the early twentieth century, the Legislature then acted to limit that liability in 1939, with the enactment of the predecessor to SDCL 31-32-10 (SDC § 28.0913). Legislative intent to abrogate a common-law rule may be shown expressly when the language "'speaks directly' to the question addressed by the common law." Rios v. Nicholson, 490 F3d 928, 931 (FedCir 2007) (quoting

McKennan Hosp., 56 SD 509, 229 NW 383 (1930); Keen v. City of Mitchell, 37 SD 247, 157 NW 1049 (1916); Gellenbeck v. City of Mobridge, 40 SD 157, 166 NW 631 (1918); Stewart v. City of Watertown, 43 SD 489, 180 NW 945 (1921); Schuler v. City of Mobridge, 44 SD 488, 184 NW 281 (1921); Doolin v. City of Winner, 48 SD 400, 204 NW 899 (1925); Usletten v. City of Brookings, 59 SD 477, 240 NW 851 (1932); Drake v. City of Mobridge, 60 SD 79, 243 NW 429 (1932); Hermandson v. City of Canton, 60 SD 367, 244 NW 525 (1932); Fenton v. Ackerman, 66 SD 465, 285 NW 516 (1939); Kimball v. City of Sioux Falls, 71 SD 35, 20 NW2d 873 (1945); Gurney v. Rapid City, 74 SD 194, 50 NW2d 360 (1951); Poppen v. City of Watertown, 74 SD 402, 53 NW2d 616 (1952); Brandner v. City of Aberdeen, 78 SD 574, 105 NW2d 665 (1960), *abrogated on other grounds*, Mount v. City of Vermillion, 250 NW2d 686 (SD 1977); Luther v. City of Winner, 2004 SD 1, 674 NW2d 339 (claim against city for injury caused by a dangerous sidewalk); Loesch v. City of Huron, 2006 SD 93, 723 NW2d 694 (bicyclist injured while riding on a city street); *see also* Budahl v. Gordon and David Assocs., 323 NW2d 853 (SD 1982) (Henderson, J., concurring specially).

United States v. Texas, 507 US 529, 534, 113 SCt 1631, 1634, 123 LEd2d 245 (1993)); *see also* Midlantic Nat'l Bank v. N.J. Dept. of Envtl. Prot., 474 US 494, 501, 106 SCt 755, 759, 88 LEd2d 859 (1986); Isbrandtsen Co. v. Johnson, 343 US 779, 783, 72 SCt 1011, 1014-15, 96 LEd 1294 (1952). From the language of the statute, it is clear the Legislature *spoke directly* to the question addressed by the common law.

[¶33.]     South Dakota is not the only state to limit governmental liability for highway construction and design. As society became more mobile in the last century, with the increasing role motor vehicles played in every facet of American life, government officials struggled with ways to contain the costs of building and maintaining safe roads. *See generally* Don F. Vaccaro, Annotation, *Liability of Governmental Entity or Public Officer for Personal Injury or Damages Arising Out of Vehicular Accident Due to Negligent or Defective Design of a Highway*, 45 ALR3d 875 (1972). A sovereign power has the authority to limit its lawsuit liability. McKellips v. Mackintosh, 475 NW2d 926, 929 (SD 1991). In South Dakota, common-law rules remain in force "except where they conflict with the will of the sovereign power," embodied in our constitution and statutes. *Id*. (citing SDCL 1-1-24; SDCL 1-1-23).

[¶34.]     A troubling question arises: Why are we only discovering now that a statute enacted almost seventy years ago must be given effect after today? The answer is that until today, this Court has never been called upon to decide whether a municipal corporation's common-law duty to maintain streets in a reasonably safe condition has been abrogated by legislation. While there have been cases examining the language of the 1939 statute, along with its predecessors and later

amendments, no case involved a claim against a municipality where that statute was raised.[8]

[¶35.] Nonetheless, there remains a considerable body of law retaining municipal common-law liability, and today's opinion should be read narrowly. This Court has recognized causes of action against municipalities for negligence arising from many functions other than the duty to maintain streets. *See* Elkjer v. City of Rapid City, 2005 SD 45, 695 NW2d 235 (defective water service lines); Pierce v. City of Belle Fourche, 2001 SD 41, 624 NW2d 353 (city owed a duty of reasonable care in the operation of its airport); Oien v. City of Sioux Falls, 393 NW2d 286 (SD 1986) (maintenance of a city pool); Rikansrud v. City of Canton, 79 SD 592, 116 NW2d 234 (1962) (maintenance of sewer or water utilities); Bucholz v. City of Sioux Falls, 77 SD 322, 91 NW2d 606 (1958) (maintenance of a city hall); Orrison v. City of Rapid City, 76 SD 145, 74 NW2d 489 (1956) (maintenance of a swimming pool dressing room); Glirbas v. City of Sioux Falls, 64 SD 45, 264 NW 196 (1935) (maintenance of a swimming pool); Norberg v. Hagna, 46 SD 568, 195 NW 438 (1923) (municipality's liability for placement of a diving board in a park swimming pool).

[¶36.] A question that should be left open here is what influence our ruling will have on our numerous precedents dealing with sidewalks. In today's opinion, the Court explicitly overrules language mentioning municipal street and sidewalk liability in several cases, but ultimately some of these cases deal only with

---

8. Even as recently as two years ago we let stand a personal injury suit against a city on a claim that a bicyclist was injured by the city's negligence in failing to maintain its streets in a reasonably safe condition. *Loesch*, 2006 SD 93, ¶12, 723 NW2d at 698. But there again, SDCL 31-32-10 was not raised. *Id.*

sidewalks.[9] It is true that streets and sidewalks have often been referred to without distinction. *Norberg*, 46 SD 568, 195 NW at 440 ("A municipal corporation is liable for negligence in permitting obstructions or defects in its streets and sidewalks."). A majority of cases have defined a sidewalk as a walkway that is part of the street. See *Hoskinson v. City of Iowa City*, 621 NW2d 425, 428 (Iowa 2001) and cases cited therein. But even if sidewalks are to be considered as parts of streets, a question we should not reach now, not all so-called sidewalks are attached to or alongside streets. *Id*. Consequently, these issues must await another case.

[¶37.]     Finally, it must be candidly acknowledged that our purported *new rule* here is, in actuality, merely dictum. Although we declare that, after today, municipal common law liability for injuries arising out of negligent failure to keep city streets in safe condition for travel stands abrogated by legislative enactment, our decision is entirely prospective. It does not resolve the issue here or apply to the parties in this case. "Obviously language purporting to overrule a case prospectively only is dictum, for it is inapplicable to the parties or the controversy before the court. In future cases the court will not be bound to follow this dictum, and therefore the overruling is but a myth." Candler S. Rogers, *Perspectives on Prospective Overruling*, 36 UMKCLRev 35, 46-47 (1968). This, in no way, detracts

---

9.     *Gurney*, 74 SD at 197, 50 NW2d at 361, *Poppen*, 74 SD at 404, 53 NW2d at 617, and Rapid City v. First Nat' Bank of the Black Hills, 79 SD 38, 40, 107 NW2d 693, 694 (1961) are sidewalk cases. *Bucholz*, is a city shooting gallery case. 77 SD at 324, 91 NW2d at 607. Although the Court does not intend to overrule these cases entirely, that point should be made explicit.

from the legitimacy or fairness of our decision.[10]  Indeed, "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted."  Landgraf v. USI Film Prods., 511 US 244, 265, 114 SCt 1483, 1497, 128 LEd2d 229 (1994).

[¶38.]     By understanding and acknowledging that our decision is dictum, we enable further development, refinement, and possible reexamination when the next case arises and we are called upon to actually apply the new rule.  In the meantime, our Legislature will also have an opportunity to reconsider the 1939 law to decide if it truly wants to immunize the type of circumstances that occurred in this case.

[¶39.]     MILLER, Retired Justice, joins this special writing.

MEIERHENRY, Justice (concurring in result only).

[¶40.]     I would affirm the trial court and not overrule our prior precedent.  We have often commented on the legislature's power to clarify or correct this Court's interpretation of legislation.  *See* State v. Schroeder, 2004 SD 21, ¶12, 674 NW2d 827, 831.  Thus, had the legislature not agreed with our prior determinations, it could have clarified its intent over these many years.  The cases overruled by the

---

10.   It is important to point out, however, that our prospective ruling may be more properly labeled "judicial dictum."  "Judicial dicta are conclusions that have been briefed, argued, and given full consideration even though admittedly unnecessary to decision.  A judicial dictum may have great weight."  Cerro Metal Products v. Marshall, 620 F2d 964, 978 n39 (3dCir 1980).  Thus, in future cases this Court may choose to be bound by this new rule as a matter of sound judicial policy.  *See* Walter v. Schaefer, *Prospective Rulings: Two Perspectives*, SupCtRev 1, 22 (1982).  *See also* Bradley Scott Shannon, *The Retroactive and Prospective Application of Judicial Decisions*, 26 HarvJL & PubPol'y 811 (2003).

majority were written over forty years ago and closer to the time of the 1939 enactment. Under the doctrine of *stare decisis,* our prior decisions should stand.

[¶41.] In addition, the trial court instructed the jury on the duty imposed by SDCL 31-28-6. In that statute, the legislature mandated that "[t]he public board or officer whose duty it is to repair or maintain any public highway shall erect and maintain at points in conformity with standard uniform traffic control practices on each side of any sharp turn, blind crossing, or other point of danger on such highway, . . . a substantial and conspicuous warning sign, which sign shall be on the right-hand side of the highway approaching such point of danger. A violation of this section is a Class 1 misdemeanor." SDCL 31-28-6.

[¶42.] Even if the legislature meant to abrogate a common-law duty, as the majority has determined, the legislature did not absolve public entities of all duty to the public in regard to highways. The legislature clearly indicates in the statute that the public board or officer in charge of repairing or maintaining the public highways "shall erect and maintain . . . a substantial and conspicuous" sign warning of sharp turns, hidden and/or other unknown dangers. *Id.* For the courts to ignore the mandatory nature of the statute and its clearly defined duty is to present a callous disregard of the legislature's intent to protect the people of this state and others who use the highways and streets.

[¶43.] Likewise, by buying insurance and participating in risk pools, public officials have committed to compensating citizens who are injured because of the public entity's negligence. *See* SDCL 21-32A-1. We should acknowledge and affirm the public entity's decision to pay for the injuries it has caused.