2004 SD 58

**Thomas BURGARD, as Personal Representative for the Estate of Anton Burgard, Deceased, Plaintiff and Appellant,**

v.

**BENEDICTINE LIVING COMMUNITIES, d/b/a Aberdeen Living Center, Defendant and Appellee.**

No. 22994.

Supreme Court of South Dakota.

Considered on Briefs March 22, 2004.

Decided April 28, 2004.

Mark A. Anderson of McNeary & Anderson Aberdeen, South Dakota, Attorneys for plaintiff and appellant.

Reed Rasmussen of Siegel, Barnett and Schutz, Aberdeen, South Dakota, Attorneys for defendant and appellee.

SABERS, Justice.

[¶ 1.] Thomas Burgard, the personal representative for the estate of Anton Burgard, brought suit against Aberdeen Living Center (ALC) for wrongful death and medical malpractice. ALC filed a motion for summary judgment and the trial court granted the motion. Burgard appeals, arguing that our decision in *Peterson v. Burns*, 2001 SD 126, 635 N.W.2d 556, should be applied prospectively only. The trial court held that the decision applied retroactively. We affirm.

## FACTS

[¶ 2.] Anton Burgard had hip surgery on May 14, 1999. Three days after the surgery, he fell in his hospital room, and staff placed him in restraints for his own safety. On May 19, he was transferred to ALC for rehabilitation. Although ALC was apparently aware that Burgard needed to be restrained for his own safety, he was not, and on three occasions he fell

while at the nursing home. As a result of the falls, he suffered a broken shoulder and a dislocated hip. After his falls, his health began to deteriorate and he developed an infection and pneumonia. He died on June 15, 1999.

[¶ 3.] Burgard's personal representative brought a complaint against ALC on June 14, 2002 alleging medical malpractice and wrongful death. The trial court found that this Court's holding in *Peterson* applied to the case and dismissed the action on ALC's motion for summary judgment. The estate appeals. Because prospective application of *Peterson* would not save the estate's claim and because the Court has already applied *Peterson* retroactively, we affirm.

### STANDARD OF REVIEW

[¶ 4.] The question before the Court is whether *Peterson* should have prospective application. We have held that prospective application of a decision "is entirely a question of law and therefore, freely reviewable." *Larsen v. Sioux Falls Sch. Dist. # 49–5*, 509 N.W.2d 703, 705 (S.D.1993) (additional citations and quotations omitted).

[¶ 5.] **Whether the decision in *Peterson v. Burns* that the two year medical malpractice statute of limitations governs wrongful death claims arising from medical malpractice should be applied prospectively.**

[¶ 6.] The relevant timeline in this case is:

June 15, 1999: Anton Burgard passes away.

October 24, 2001: This Court publishes *Peterson.*

June 14, 2002: Estate files suit for medical malpractice and wrongful death.

[¶ 7.] The trial court held that the statute of limitations for the medical malpractice claims expired before the estate filed suit. The estate does not appeal that determination. It raises the question whether the wrongful death claim survives in spite of this Court's ruling in *Peterson.*

[¶ 8.] The wrongful death statute of limitation provides:

Every action for wrongful death shall be commenced within three years after the death of such deceased person.

SDCL 21–5–3. According to this statute, the wrongful death claim was brought one day before the expiration of the statute of limitations. However, in *Peterson*, we held that a wrongful death claim premised upon medical malpractice was governed by the medical malpractice limitation of two years. *Peterson*, 2001 SD 126 at ¶ 46, 635 N.W.2d at 572; SDCL 15–2–14.1. In the instant case, the trial court held that the rule of *Peterson* was applicable and the estate appeals, arguing that *Peterson* should have prospective application only.*

---

* *Peterson* was a legal malpractice case. In the underlying case, the plaintiff's first attorney, Burns, brought medical malpractice and wrongful death claims in federal court. The doctors moved to dismiss for lack of subject matter jurisdiction. On March 12, 1998, Burns withdrew as counsel. New attorneys, Johnson and Eisland, were retained and filed another suit in state court raising the same claims. At the time the state claim was filed, the statute of limitation for medical malpractice had expired, but Johnson and Eisland argued that the pendency of the federal claim

tolled the statute of limitation. The action in federal court was dismissed for lack of subject matter jurisdiction and the state action was dismissed because the malpractice statute of limitation had expired.

On appeal of the legal malpractice claim, Burns argued that the wrongful death statute of limitation should have applied in the state case. The medical malpractice statute of limitation expired on March 22, 1997, and the wrongful death statute of limitation expired on April 9, 1998. If the Court had decided that the wrongful death statute of

[¶ 9.] Traditionally, the general rule in civil cases was that unless a court declared that its decision was to have only prospective effect, the decision would have both prospective and retroactive effect. *Baatz v. Arrow Bar*, 426 N.W.2d 298, 300 (S.D.1988). This general rule arises from the theory that the judiciary does not make law, but rather interprets it. Therefore, unless the Court announces that a decision is to have prospective effect only, it is fairly assumed that the decision will apply prospectively and retroactively. *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 98, 113 S.Ct. 2510, 2518, 125 L.Ed.2d 74, 87 (1993) (additional citation omitted). However, the Court "has inherent power to apply its decisions prospectively or retrospectively." *State v. One 1966 Pontiac*, 270 N.W.2d 362, 365 (S.D. 1978) (additional citations omitted). We have consistently affirmed the principle that "the Constitution neither prohibits nor requires retrospective effect." *Vogt v. Billion*, 405 N.W.2d 635, 636 (S.D.1987) (quoting *Linkletter v. Walker*, 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601, 608 (1965)) (additional citation omitted). "Once the need is established for applying a principle prospectively, there is a large measure of judicial discretion involved in deciding the time from which the new principle is to be deemed controlling." *Vogt*, 405 N.W.2d at 637.

[¶ 10.] We have adopted the factors promulgated by the United States Supreme Court for determining whether a decision will have only prospective application. Those factors are:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied *or by deciding an issue of first impression whose resolution was not clearly foreshadowed.* Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the injustice or hardship" by a holding of nonretroactivity.

*Brown v. John Morrell & Co.*, 511 N.W.2d 277, 278 (S.D.1994) (quoting *Fisher v. Sears, Roebuck & Co.*, 88 S.D. 1, 4–5, 214 N.W.2d 85, 87 (quoting *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296, 306 (1971)) (emphasis supplied)). It is important to note that the factors the Court has adopted are premised on the presumption that normally, our decisions will be given retroactive effect. We employ the factors to determine whether equity requires a departure from the norm. *Baatz*, 426 N.W.2d at 300 (quoting AmJur2d § 233 (1965) ("the general rule in civil cases seems to be that unless the overruling decision declares that it shall have only prospective effect, [ ] the judicial overruling of a precedent has both prospective and retroactive effect.")).

---

limitation applied, Johnson and Eisland would have been liable for malpractice for missing the filing deadline. If the medical malpractice statute of limitation applied, Johnson and Eisland would not be liable because they were not retained until after the time for filing a malpractice action expired.

The Court determined that the malpractice statute of limitation applied and Johnson and Eisland were relieved of liability.

■ [¶ 11.] We need not examine the factors promulgated in *Chevron*, for even if the Court were to hold that *Peterson* announced a new rule of law and should have prospective effect only, it would not save the estates claim. In *City of Aberdeen v. Meidinger*, 89 S.D. 412, 233 N.W.2d 331 (1975), we noted that a decision applied prospectively "does not apply to cases handled by the . . . courts previous to the date of this decision." *City of Aberdeen*, 89 S.D. at 417, 233 N.W.2d at 334. In other words, "prospective application means the overruling decision is not applied to cases commenced before the decision was announced. Therefore, the overruling *decision is applied to cases commenced after the decision is announced.*" *Baatz*, 426 N.W.2d at 301–302 (emphasis supplied). "Although it can be argued that prospective application should mean the decision is applied only to *transactions or events* occurring after the announcement of the decision, this is not what our prior case law indicates for obvious and sound reason." *Id.* at 302. In the instant case, even if we held that *Peterson* has prospective effect only, it would not save the estate's claim because this case was commenced in June 2002, eight months after the decision was announced in October 2001.

[¶ 12.] Furthermore, the Court has already given *Peterson* retroactive effect. In *Peterson*, we reversed the circuit court's determination that the relevant statute of limitation was three years and the determination that Johnson and Eisland were proper parties to the suit. *Peterson*, 2001 SD 126 at ¶ 46, 635 N.W.2d at 572. The case was remanded for proceedings consistent with those determinations. The claims against Johnson and Eisland were no longer viable and had to be dismissed because they were not proper parties to the suit. Assuming that *Peterson* represented a change in the law, the Court chose to apply the holding retroactively to Johnson and Eisland even though at the time of the transaction the law arguably allowed for liability.

■ [¶ 13.] In *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), the United States Supreme Court revised its analysis of this issue and held, the "Court's application of a rule of federal law to the parties before the Court requires every court to give retroactive effect to that decision." *Harper*, 509 U.S. at 90, 113 S.Ct. at 2513, 125 L.Ed.2d at 81. This Court is not bound to adopt this bright line rule of retroactivity for our decisions, and the parties have not requested that we do so. While we do not abandon our analysis of the equities in cases such as this, we accept the Court's reasoning that "the legal imperative 'to apply a rule of federal law retroactively after the case announcing the rule has already done so' must 'prevail over any claim based on *Chevron Oil* analysis.'" *Id.* This determination arose from the Court's recognition of the potential inequity of application of "selective prospectivity." The Court previously defined selective prospectivity as a case wherein the court applies a new rule "in the case in which it is pronounced, then return[s] to the old one with respect to all others arising on facts predating the pronouncement." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 537, 111 S.Ct. 2439, 2444, 115 L.Ed.2d 481, 489 (1991). This is the doctrine that the estate requests this Court adopt in this case. However, application of selective prospectivity has already been rejected in the criminal context, *see e.g. State v. Tuttle*, 460 N.W.2d 157, 159 (1990) (citing *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)), and we have not endorsed it in the civil context. There is no good reason for accepting it now. Selective prospectivity ignores the principle that "litigants in simi-

lar situations should be treated the same, a fundamental component of stare decisis and the rule of law generally." *James B. Beam Distilling,* 501 U.S. at 537, 111 S.Ct. at 2444, 115 L.Ed.2d at 489.

[¶ 14.] Alternatively, an analysis of the factors from *Chevron* would not permit a holding that *Peterson* should be applied only prospectively. Under *Chevron,* our threshold question is whether the holding of *Peterson* announced a new rule of law. *Larsen,* 509 N.W.2d at 706. If the case did not announce a new rule of law, our inquiry ends because "by definition, without a new rule, there is no change in the law and the question of retroactivity is immaterial." *Id.* (citing *United States v. Bowen,* 500 F.2d 960, 975 (9th Cir.1974)).

[¶ 15.] *Peterson* did not overrule clear past precedent, but it did address a question of first impression. Therefore, we inquire whether the Court's resolution of the issue was "clearly foreshadowed." Our review of the decision of *Peterson* reveals that the Court's resolution of this issue was clearly foreshadowed because it simply interpreted existing statutes and applied settled law.

[¶ 16.] In *Peterson,* the Court faced a question of statutory interpretation. Specifically, we asked whether the three year wrongful death statute of limitations extended the medical malpractice statute of limitations. *Peterson,* 2001 SD 126 at ¶ 5, 635 N.W.2d at 560–61. When a court is faced with a question of statutory construction, it is not making new law, but rather interpreting existing law. *See e.g. Brown,* 511 N.W.2d at 278. Therefore, although there is still a viable argument that the law should apply only prospectively, the argument is not as compelling as it would be in a case overruling settled law. When a prior decision merely applies existing statutory law, it is "unnecessary to

state that the decision was both prospective and retrospective." *Baatz,* 426 N.W.2d at 300. This is because the statute was within the codified laws before any judicial decision was announced and "as such, it provided a standard of care or conduct from the moment it became law." *Id.*

[¶ 17.] The principal rationale for allowing prospective application is the reliance of parties on the old rule of law. The estate can show no such reliance in this case because the Court's holding in *Peterson* was based on statutory law. The medical malpractice statute of limitations is an "occurrence rule." A cause of action for medical malpractice accrues when the malpractice occurs, regardless of when the actual harm is discovered. *Peterson,* 2001 SD 126 at ¶ 12, 635 N.W.2d at 563 (citing *Beckel v. Gerber,* 1998 SD 48, ¶ 21, 578 N.W.2d 574, 578; *Alberts v. Giebink,* 299 N.W.2d 454, 455–56 (S.D.1980)). Legislative actions and precedent have made clear the intent of the Legislature to protect medical practitioners by preventing the type of contingent liability which would be created by permitting other statutes to toll the medical malpractice limitation. As the *Peterson* Court noted:

The medical malpractice statute of limitations provides that an action for medical malpractice can only be commenced within two years after the act of alleged malpractice occurred whether based on contract or tort. The statute is *obviously* intended to limit negligence actions for personal injury that could otherwise be brought within three years under the personal injury statute of limitations or contract actions for medical services that could otherwise be brought within six years under the contract statute of limitations. *Just as obviously, the medical malpractice statute of limitations is intended to limit wrongful death actions*

based on medical malpractice to two years. If the statute can limit personal injury liability for malpractice to two years and contract liability for malpractice to two years, it can also limit actions for wrongful death based on medical malpractice to two years.

*Peterson*, 2001 SD 126 at ¶ 22, 635 N.W.2d at 565 (emphasis supplied, footnotes omitted).

[¶ 18.] This result was clearly foreshadowed by settled law, legislative intent, and the plain language of the statute. Any doubt as to the resolution of *Peterson* is resolved by looking to the Court's analysis of discovery and damages rules in other professional malpractice cases, *see e.g. Green v. Siegel, Barnett & Schutz,* 1996 SD 146, 557 N.W.2d 396, and the Court's previous holding that "medical malpractice characterized as fraud and deceit will not sanction a shift to a more beneficial statute of limitations." *Peterson*, 2001 SD 126 at ¶ 26, 635 N.W.2d at 566–67 (quoting *Bruske v. Hille,* 1997 SD 108, ¶ 13, 567 N.W.2d 872, 876). Since no new rule of law was announced in *Peterson*, it is unnecessary for the Court to engage in analysis of the remaining *Chevron* factors.

[¶ 19.] For all of the foregoing reasons, the trial court is affirmed.

[¶ 20.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.