#26155-a-LSW

**2012 S.D. 67**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

SBS FINANCIAL SERVICES, INC.,                    Plaintiff and Appellee,

    v.

THE PLOUF FAMILY TRUST, MICHAEL
PLOUF, SUCCESSOR TRUSTEE;                        Defendants and Appellants,

    and

LARRY G. ENGLUND, MARIANNE M.
ENGLUND, HUSBAND and WIFE; and
ITC SERVICE FIRST, INC.,                         Defendants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE DOUGLAS E. HOFFMAN
Judge

* * * *

E. STEEVES SMITH of
Tinan, Smith & Bucher
Mitchell, South Dakota                           Attorneys for plaintiff
                                                and appellee.


MEREDITH A. MOORE
JAYNA M. VOSS of
Cutler & Donahoe, LLP
Sioux Falls, South Dakota                        Attorneys for defendants
                                                and appellants.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 17, 2012

OPINION FILED **10/03/12**

#26155

WILBUR, Justice

[¶1.] In this case, we interpret a trust instrument to decide whether the death of Betty Plouf triggered the offset provision of the Plouf Family Trust (Trust), and thus, instantaneously satisfied the mortgage lien the Trust held on the home of a beneficiary. We hold that it did and affirm the decision of the trial court.

## FACTS AND PROCEDURAL BACKGROUND

[¶2.] Although this case turns on the interpretation of a trust instrument, it has its origins in a first and second mortgage on the home of Larry and Marianne Englund. In 1993, the Englunds, in exchange for a $52,000 loan, gave Marianne's parents, Richard and Betty Plouf, a mortgage on the Englunds' home. In 2002, the Ploufs assigned their mortgage interest in the home to the Trust for which they were settlors, lifetime beneficiaries, and co-trustees. Richard died in March 2007, and Betty, under the terms of the Trust, became the "surviving spouse" beneficiary. The Ploufs' five children, including Marianne, were the remainder beneficiaries of the Trust.[1]

[¶3.] In 1997, the Englunds, in exchange for a $97,956.41 loan, gave the First Bank of South Dakota, N.A., a mortgage interest in their home. This mortgage was later assigned to appellee SBS Financial Services (SBS). In 2008, SBS filed this action against the Englunds, the Trust, and Michael Plouf, the Successor Trustee of the Trust (collectively, "Appellants"). SBS asked that the trial court determine that its mortgage was superior to the mortgage held by the Trust

---

1. One of the children, Michael Plouf, later disclaimed his interest.

and allow SBS to foreclose on the Englunds' home.[2] According to SBS, although the Trust filed its mortgage prior to SBS's mortgage, the Trust obtained the mortgage in a fraudulent manner and thus its mortgage interest was void.

[¶4.]	The Appellants defended against the fraud claim and filed a cross-claim asserting that their mortgage was superior and requested an order authorizing them to commence with foreclosure. After trial to the court, the court determined that the Trust mortgage was valid and superior to SBS's mortgage and the trial court issued an order to this effect on February 24, 2011. However, the order did not contain any language regarding whether either party could pursue foreclosure.

[¶5.]	About a week later, on March 4, 2011, Betty died. On April 20, 2011, SBS filed a motion to vacate and set aside or, in the alternative, to modify the February 24 order. In addition, the Trust brought a motion to foreclose on April 29, 2011.

[¶6.]	The court heard both motions on May 20, 2011. SBS, relying on language contained in the Trust, argued that Betty's death constituted new evidence which justified vacating the February 24 order. In its motion, SBS contended that Betty's death triggered an offset provision of the Trust. According to SBS, under the terms of the offset provision, immediately upon Betty's death,

---

2.	In 2003, the Englunds declared bankruptcy. The bankruptcy discharged all the Englunds' non-secured personal debts. However, the two mortgages that are the subject of this appeal remained intact and both parties stipulated that they are only seeking an *in rem* claim against the real estate collateral.

Marianne's mortgage debt to the Trust was offset against her share of the Trust proceeds; thus, satisfying the Trust's mortgage.

[¶7.]     The trial court agreed and found that the trust document mandated that the trustee offset the outstanding mortgage debt to the Trust against Marianne's 25% interest in the approximate $3 million of Trust assets. Subsequently, on August 24, 2011, the trial court entered a "Judgment Vacating Order of February 24, 2011" ordering that the Trust's mortgage was fully satisfied and SBS had a valid first-priority lien.  The judgment also ordered that SBS "may proceed with its foreclosure proceedings."

[¶8.]     On appeal, Appellants argue that the trial court did not have authority to revisit its initial order regarding priority and, in the alternative, that the trial court erred in ruling that the Trust mandated the trustee exercise an offset of the Englunds' debt to the Trust.

## ANALYSIS AND DECISION

[¶9.]     **1.     The trial court had inherent authority to revisit its February 24 order.**

[¶10.]     First, we must address whether the trial court had authority to revisit its initial February 24 order that the Trust had a first-priority lien.  Much of the debate at the rehearing, and now on appeal, centered on whether the trial court had authority under SDCL 15-6-60(b) to revisit this order.

[¶11.]     However, the limitations contained in SDCL 15-6-60(b) only constrain a trial court's ability to "relieve a party or his legal representative from a *final* judgment, order, or proceeding[.]"  (Emphasis added.)  As the trial court noted,

before offering its SDCL 15-6-60(b) analysis as an alternative source of authority, "the February 24 Order was not a final judgment." We agree.

[¶12.] The February 24 order only determined lien priority. Both SBS and the Trust filed suit asking the trial court to determine lien priority *and* allow the parties to foreclose. As we have previously noted, in accord with the United States Supreme Court, "a 'final decision' is defined as 'one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Midcom, Inc. v. Oehlerking*, 2006 S.D. 87, ¶ 15, 722 N.W.2d 722, 726 (quoting *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199, 108 S. Ct. 1717, 1720, 100 L. Ed. 2d 178 (1988)). Here, there was no final decision as the issue of foreclosure was still pending before the trial court.

[¶13.] We have previously held that "[a] trial court has the inherent power to reconsider and modify an order any time prior to entry of judgment." *Moore v. Michelin Tire Co., Inc.*, 1999 S.D. 152, ¶ 46, 603 N.W.2d 513, 525 (citing *Viehweg v. Mello,* 5 F. Supp. 2d 752, 757 (E.D. Mo. 1998), *aff'd*, 198 F.3d 252 (8th Cir. 1999)). This inherent authority allows a trial court to "'depart from an earlier holding if it is convinced that the holding is incorrect.'" *Id.* Thus, since the February 24 order was not a final order disposing of all remaining issues in the case, i.e. foreclosure, the trial court had inherent authority to revisit its decision.[3]

[¶14.] **2. The trial court properly ruled that the trust instrument mandated that the trustee exercise the offset provision.**

---

3. We note that the second order, in addition to determining that SBS had first-priority, also resolved the remaining issue of foreclosure.

[¶15.] Since the trial court had inherent power to reconsider its February 24 interim order, we must determine whether the trial court's subsequent August 24 order properly interpreted the trust instrument. In short, Appellants and SBS dispute whether the trial court properly concluded that Betty's death automatically triggered the offset provision contained in Section 5.05 of the Trust.

[¶16.] The interpretation of trust language is a question of law that this Court reviews de novo. *In re Florence Y. Wallbaum Revocable Living Trust Agreement*, 2012 S.D. 18, ¶ 20, 813 N.W.2d 111, 117. "When interpreting a trust instrument, 'the court's task is to ensure that the intentions and wishes of the settlor are honored.'" *Id.* (quoting *Luke v. Stevenson,* 2005 S.D. 51, ¶ 8, 696 N.W.2d 553, 557). In determining the intent of the settlor, we look to the language of the trust instrument, and "[i]f the language of the trust instrument makes the intention of the settlor clear, it is our 'duty to declare and enforce it.'" *Id.*

[¶17.] Here, the relevant language of the trust instrument is contained in Section 5.05 of the Trust, which provides:

> <u>Allocation of Beneficiaries' Financial Obligations to Remainder of Exemption Trust.</u> On the death of the Surviving Spouse, the division of the remainder of the Exemption Trust into shares or subshares for distribution to beneficiaries shall fully reflect *any* financial obligations of *any* beneficiaries of the Exemption Trust owing to the Survivor's Trust or to the Exemption Trust or to either of the settlors' estates. Such financial obligations shall include *any monetary loan* or advance of *any* kind to a beneficiary that is either (a) listed in Schedule D to this trust, if it has not been repaid or forgiven in writing by both settlors, or (b) evidenced by an executed note or other written acknowledgment by a beneficiary of indebtedness that has not been repaid or forgiven in writing by the settlor(s) named in such acknowledgment of indebtedness.

(Emphasis added.)

[¶18.] The language used in the offset provision of the Trust indicates that it was the settlors' intent that "[o]n the death of the Surviving Spouse . . . *any* financial obligations of *any* beneficiaries" owed to the Trust shall be offset against the beneficiaries' share. (Emphasis added.) The only limitation placed on this offset provision is that the obligation must be "(a) listed in Schedule D to this trust, if it has not been repaid or forgiven in writing by both settlors, *or* (b) evidenced by an executed note or other written acknowledgment . . . ." (Emphasis added.) Thus, upon Betty's—the Surviving Spouse—death, the trust instrument required the trustee to offset Marianne's share by any obligation she owed to the Trust listed in Schedule D, entitled "Financial Obligations of Beneficiaries of the Plouf Family Trust," of the trust instrument or evidenced by an executed note or other written acknowledgement. Marianne's mortgage debt to the Trust satisfies both alternatives.

[¶19.] Not only was the mortgage debt listed in Schedule D, initially, it was the *only* item listed in Schedule D.[4] Moreover, as well as being listed in Schedule D, the record demonstrates that Marianne's indebtedness was evidenced by a note and mortgage. Given that the mortgage debt satisfies both alternative limitations placed on the offset provision by the settlors, it is clear that the settlors intended the mortgage debt to be subject to the offset provision contained in Section 5.05 of the Trust.

---

4. In 2002, Schedule D was amended to reflect that the Ploufs had assigned the note to the Trust, a principal mortgage balance of $80,000 at 0% interest, and a debt to the Trust owed by another beneficiary.

[¶20.]    Appellants attempt to sidestep the unambiguous language of Section 5.05 by arguing (1) that the trustee must have the legal authority to pursue all secured obligations owed to the Trust *before* the offset provision of the Trust is exercised and (2) that this interpretation of the offset provision of the Trust divests the trustee of its power under the terms of the Trust and South Dakota law to decide how and when to pursue a claim against a beneficiary.

[¶21.]    Appellants' first argument disregards the directive contained in the trust instrument that the trustee offset outstanding debts against a beneficiary's distribution "on the death of the Surviving Spouse." Notably, Section 5.05 provides "distribution[s] to beneficiaries shall fully reflect *any* financial obligations of *any* beneficiaries[.]" (Emphasis added.) The use of the word "any" by the settlors demonstrates that it was their intent that all debts the beneficiaries owed to the Trust, whether secured or unsecured, be setoff against the beneficiary's respective share at the time of the surviving spouse's death. Thus, we hold that the language of the trust instrument unambiguously provides the settlors' intent as to the timing of the calculation.

[¶22.]    To support its second argument that the trial court's decision divested the trustee of its power to pursue a claim against a beneficiary, Appellants direct this Court to Section 7.14 of the trust instrument entitled "Power to Commence or Defend Litigation and to Compromise"[5] and several state statutes contained in

---

5.    The relevant portion of this provision provides that the trustee has the power

> [t]o commence or defend, at the expense of the trust, such
> litigation with respect to the trust or any property of the trust

(continued . . . )

Chapter 55-1A "Trustees' Powers Granted by Reference."[6] According to Appellants, under the terms of the Trust and South Dakota law, the trustee has discretion to decide how and when to pursue a claim against a beneficiary.

[¶23.]        However, under the terms of the Trust, there no longer exists any claim for the trustee to pursue. "It is generally recognized that a 'mortgage is extinguished by the payment of the debt.'" *See Nattymac Capital LLC v. Pesek,* 2010 S.D. 51, ¶ 12, 784 N.W.2d 156, 159 (quoting *Shriver v. Sims,* 255 N.W. 60, 63 (Neb. 1934)). The unambiguous terms of the Trust mandated an offset at the time of Betty's death, thus extinguishing the underlying mortgage and any claim the trustee may have previously possessed. Consequently, in this situation, even assuming the trustee has discretion to pursue a claim against a beneficiary, there no longer exists a claim to pursue.

[¶24.]        **3.        Neither party is entitled to appellate attorney fees.**

[¶25.]        Finally, both parties have moved for appellate attorney fees and submitted an itemized statement of legal services rendered pursuant to SDCL 15-26A-87.3. However, neither party has cited authority that appellate attorney fees

_____

(. . . continued)

estate as the trustee may deem advisable, and to compromise or otherwise adjust any claims or litigation against or in favor of the trust.

The trustee's powers under this subsection shall apply during the term of the trust and after distribution of trust assets.

6.        Specifically, Appellants direct this Court to SDCL 55-1A-11, "Disposal of trust assets"; SDCL 55-1A-25, "Claims in favor of or against trust or trustee"; SDCL 55-1A-32, "Prosecution or defense of actions and proceedings"; and, SDCL 55-1A-38, "Trustee may perform necessary and appropriate acts".

are proper in this type of action.  Therefore, both parties have waived their motions.

*See Weekley v. Wagner*, 2012 S.D. 10, ¶ 24, 810 N.W.2d 340, 346.

## CONCLUSION

[¶26.]     Because the trial court possessed inherent authority to revisit its

February 24, 2011 order and properly interpreted the Trust, we affirm.

[¶27.]     GILBERTSON, Chief Justice, KONENKAMP, ZINTER, and

SEVERSON, Justices, concur.