#29473-a-MES
**2021 S.D. 61**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

IN THE MATTER OF AN APPEAL
BY AN IMPLICATED INDIVIDUAL.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JAMES A. POWER
Judge

\* \* \* \*

MARTY J. JACKLEY
STACY R. HEGGE of
Gunderson, Palmer, Nelson,
   & Ashmore, LLP
Pierre, South Dakota               Attorneys for appellant.


JEFFREY R. BECK
Sioux Falls, South Dakota          Attorney for appellee
                             ProPublica.


JON E. ARNESON
Sioux Falls, South Dakota          Attorney for appellee Argus
                             Leader.

\* \* \* \*

ARGUED
AUGUST 24, 2021
OPINION FILED **10/27/21**

#29473

SALTER, Justice

[¶1.]        A special agent of the South Dakota Division of Criminal Investigation (DCI) sought several search warrants involving the Implicated Individual. The circuit court approved the warrants, which, along with the supporting affidavits and inventories, were filed with the clerk of courts. The circuit court sealed the search warrant files at the agent's request, but later reconsidered its authority to do so after members of the press sought access to the files. The court ultimately ordered the search warrants and corresponding inventories to be unsealed. The Implicated Individual has appealed. We affirm.

## Facts and Procedural History

[¶2.]        On December 9, 2019, a DCI special agent requested a search warrant seeking information relating to an email account associated with the Implicated Individual. The circuit court issued the warrant the same day. On December 16, 2019, the search warrant, the affidavit in support of the search warrant, and the verified inventory were all filed with the Minnehaha County Clerk of Courts.

[¶3.]        On March 13, 2020, the DCI agent sought four additional search warrants related to the Implicated Individual, all of which the circuit court issued.[1] The additional search warrants, the affidavits supporting the warrants, and the verified inventories were also filed with the Minnehaha County Clerk of Courts. The warrants were to be served upon internet or cellular data providers and were not directed to the Implicated Individual or the Implicated Individual's property.

---

1.     The same circuit court judge reviewed all five of the search warrants at issue here.

Pursuant to the DCI agent's requests, the court entered separate orders prohibiting disclosure of the fact that the search warrants had been executed. These non-disclosure orders were also filed with the clerk.

[¶4.]     For each of the five warrants, the DCI agent submitted an affidavit in support of a request to seal the search warrant affidavit and the search warrant itself. According to the agent, "[p]remature disclosure" of the information "could unnecessarily impede any continuing investigation . . . ." The circuit court entered orders in the individual search warrant files sealing each of the warrants and their supporting affidavits.

[¶5.]     In July 2020, a reporter employed by the news organization ProPublica contacted the Second Circuit Court Administrator requesting access to the sealed search warrant documents involving the Implicated Individual. Learning of this request, the circuit court reflected on its authority to enter the earlier orders to seal. Contrasting a Supreme Court rule governing access to court records with specific statutory limitations on sealing search warrant records, the court emailed general counsel for ProPublica and the South Dakota Attorney General's Office to discuss "the scope of [the court's] authority to seal documents related to a search warrant . . . ." During the ensuing email exchanges, the court learned that the Implicated Individual was represented by counsel and subsequently provided an opportunity for the Implicated Individual to participate in the court's inquiry.[2]

---

2.     While the circuit court's determination of its authority to seal the search warrant records was pending, it indicated its willingness to keep all communications confidential but advised counsel that their submissions to the court and their email exchanges may become publicly available in the

(continued . . .)

[¶6.]        In August 2020, a reporter for the Argus Leader, a regional daily newspaper, contacted the circuit court requesting an opportunity to intervene in the proceedings.[3]  After conferring with the parties, the court granted the Argus Leader's request and allowed it to present its legal position regarding access to the search warrant documents.  Amid these proceedings, the court consolidated the five search warrant files.[4]

[¶7.]        On August 19, 2020, the circuit court issued a protective order prohibiting the Press from disclosing or publicly disseminating "any information that is currently sealed that [it] obtains through its participation in these proceedings."  The protective order was "intended to be consistent with previous admonitions to counsel . . . to keep this matter confidential until the issues are resolved."

[¶8.]        The circuit court established a briefing schedule and identified its principal inquiry as "the scope of [the court's] authority to seal the contents of a

_____

(. . . continued)
        event the court determined it lacked the authority to seal the contents of the search warrant files.

3.      ProPublica and the Argus Leader will be referred to jointly as "the Press."

4.      The Implicated Individual makes a passing reference to the Press's "authority to be [parties] in this appeal" because both news organizations asked for the search warrant information without seeking formal intervention or through motion practice.  However, the Implicated Individual does not seriously challenge the standing of either news organization.  In context, it appears the circuit court was aware that its procedure for revisiting the question of its authority was somewhat informal, but it stated it was relying upon basic standards of fairness and the provisions of SDCL 15-15A-13, which allow it to "hear any objections [to restricting access to court records] from other interested parties . . . ."

search warrant file[.]"[5]  Following its initial contemplation regarding the topic, the court specifically asked the parties to address the provisions of SDCL chapter 15-15A, which restates Supreme Court Rule 05-05 regarding public access to court records[6] and SDCL 23A-35-4.1, which is a specific statute addressing a court's limited authority to seal certain documents associated with a search warrant.

[¶9.]        All parties submitted briefs, with the Press submitting jointly.  On October 7, 2020, the circuit court heard argument and issued an oral decision that generally favored the Press's request for information.  The court determined that SDCL 23A-35-4.1, by its express terms, prohibited a court from sealing the search warrants and verified inventories.  And though the statute authorized an order sealing the affidavit in support of a search warrant, the court determined the authority was temporal and ended with the termination of the relevant investigation or the filing of an indictment or information.  On this basis, the court issued five amended orders on October 15, requiring that the search warrants and inventories "be unsealed and become publicly accessible court records."  The court further ordered that "[f]ollowing termination of the investigation or filing of an

---

5.    The court asked the parties "to assume that the file includes (1) an affidavit in support of a search warrant; (2) a search warrant; (3) a verified inventory; and (4) an affidavit and order related to sealing the file."  We note that no returns are filed in any of the search warrant files.  *See* SDCL 23A-35-10 ("The return shall be made promptly and shall be accompanied by a written inventory of any property taken.").

6.    Though reprinting our court rules among South Dakota's codified laws may, in some ways, enhance accessibility, it has the unfortunate consequence of confusing those unfamiliar with the practice because rules are assigned the same types of title, chapter, and section numbers as are enactments by the Legislature.  A volume of parallel tables published with our codified laws lists the Court's rules by year and their location within the code.

indictment, the [supporting affidavits'] contents will [be] unsealed and available to public inspection or disclosure as a publicly accessible court record."

[¶10.]     The circuit court determined its amended orders were final because they effectively ended the court's consideration of its authority to seal documents in the five search warrant files.[7]  However, in the event of an appeal, the court stayed enforcement of the amended orders for 30 days.  The court reasoned that "unsealing the attorney correspondence with the court, the briefs, and [its] orders would reveal some information that would remain sealed if the [I]mplicated [I]ndividual were to prevail [on appeal]."  Also, as a practical matter, the court recognized that "disclosure cannot be undone and that unsealing the documents would create an

---

7.     The parties have not challenged the circuit court's determination that its amended orders were final and appealable, and we agree they were.  *See Johnson v. Lebert Constr., Inc.*, 2007 S.D. 74, ¶ 4, 736 N.W.2d 878, 879 ("We are required to take notice of jurisdictional questions, whether presented by the parties or not." (quoting *Double Diamond Constr. v. Farmers Co-op. Elevator Ass'n of Beresford*, 2003 S.D. 9, ¶ 6, 656 N.W.2d 744, 746)).  The efforts by law enforcement officers to seek and obtain a search warrant involve what is essentially an ex parte, non-adversarial proceeding.  Here, the court's unilateral post hoc examination of its authority to issue the earlier orders to seal involved its prudential ability to reconsider its own orders.  *See SBS Fin. Servs., Inc. v. Plouf Family Trust*, 2012 S.D. 67, ¶ 13, 821 N.W.2d 842, 845 (recognizing that the trial court should "depart from an earlier holding if it is convinced that the holding is incorrect") (quoting *Moore v. Michelin Tire Co., Inc.*, 1999 S.D. 152, ¶ 46, 603 N.W.2d 513, 525).  The resulting process was, therefore, irregular in the sense that it involved an ancillary issue not typically litigated in search warrant proceedings.  Regardless, the court's amended orders, as it correctly concluded, finally determined the question of its legal authority and left nothing further for the court to do other than unseal certain documents.  We have appellate jurisdiction to review these orders under SDCL 15-26A-3(4), which allows the appeal of "[a]ny final order affecting a substantial right, made in special proceedings . . . ."

argument whether any appeal was moot and at a minimum make any relief obtained by [the Implicated Individual] on appeal less effective."

[¶11.] In an email to the circuit court on November 4, 2020, counsel for the Implicated Individual advised that his client intended to file a notice of appeal and, for the first time, argued the court's decision should be applied prospectively only to "new search warrant materials" filed after the date of the decision. The prospective application issue was not further briefed or addressed by the other parties or the court before the Implicated Individual and the State filed notices of appeal two days later, on November 6.

[¶12.] In separate, identical docketing statements, the Implicated Individual and the State both identified the same challenge to the circuit court's amended orders along with an inquiry as to whether any decision affirming the court should be applied only prospectively. In order to preserve the status quo, we accepted the parties' stipulation to extend the circuit court's stay during the pendency of this appeal.

[¶13.] The State, acting through the Attorney General's Office, later dismissed its appeal and has elected not to submit a brief in the remaining, current appeal. The State did file a letter with this Court, indicating that its "interests in preserving the integrity of law enforcement investigations have been adequately covered" by the Implicated Individual's brief. The State's letter also mentioned that the State "did not oppose the relief sought" by the Implicated Individual.

[¶14.] The Implicated Individual's appeal presents the following issues for our review:

1.  Whether the circuit court erred when it determined it was prohibited by SDCL 23A-35-4.1 from sealing certain search warrant records.

2.  If we conclude the court correctly determined its authority to seal certain records, whether such a decision should only be applied prospectively to search warrants filed after the date of our decision.

## Standard of Review

[¶15.]     The principal issue presented here requires us to examine the text of our Supreme Court rules, SDCL 23A-35-4.1 and, to a lesser extent, the South Dakota Constitution.  These are purely legal issues of textual interpretation that we review de novo.  *Expungement of Oliver*, 2012 S.D. 9, ¶ 5, 810 N.W.2d 350, 351 ("Issues of statutory and constitutional interpretation are questions of law" that we review de novo); *see also Leighton v. Bennett*, 2019 S.D. 19, ¶ 7, 926 N.W.2d 465, 467–68 (applying de novo standard of review to interpretation of court-adopted rules of civil procedure).

## Analysis and Decision

### *Search Warrant Records*

[¶16.]     Resolving an issue of statutory interpretation necessarily begins with an analysis of the statute's text.  *Long v. State*, 2017 S.D. 78, ¶ 12, 904 N.W.2d 358, 363.  "When the language in a statute is clear, certain, and unambiguous, there is no reason for construction, and this Court's only function is to declare the meaning of the statute as clearly expressed."  *Id.* ¶ 13, 904 N.W.2d at 364 (quoting *Puetz Corp. v. S.D. Dep't of Revenue*, 2015 S.D. 82, ¶ 16, 871 N.W.2d 632, 637); *see also Salzer v. Barff*, 2010 S.D. 96, ¶ 5, 792 N.W.2d 177, 179 ("We have no cause to invoke

the canons of construction where the language of a statute is clear.") (citing *Petition of Famous Brands, Inc.*, 347 N.W.2d 882, 885 (S.D. 1984)).

[¶17.]     Here, the language of SDCL 23A-35-4.1 is clear and unambiguous. The relevant portion of the statute provides:

> If not filed earlier, any affidavit in support of a search warrant shall be filed with the court when the warrant and inventory are returned. Upon filing the warrant and supporting documents, the law enforcement officer may apply by separate affidavit to the court to seal the supporting affidavit from public inspection or disclosure. *The court, for reasonable cause shown, may order the contents of the affidavit sealed from public inspection or disclosure but may not prohibit disclosure that a supporting affidavit was filed, the contents of the warrant, the return of the warrant, nor the inventory. The court may order that the supporting affidavit be sealed until the investigation is terminated or an indictment or information is filed.*

(Emphasis added).

[¶18.]     The plain language of the statute provides an unmistakable expression of legislative intent. A court may seal the contents of an affidavit in support of a search warrant upon a showing of reasonable cause, but only until the investigation is terminated or an indictment or information is filed. The statute's text is equally clear in its command that the court "may not prohibit" the public disclosure of other specific records, namely, the contents of the warrant, the return of the warrant, and the inventory. Nor may the court prohibit public disclosure of the fact that a search warrant affidavit has been filed. The Press, for its part, has not sought review of the portion of the circuit court's amended orders sustaining its decision to seal the search warrant affidavits for the time being, and it would seem, from all appearances, that an elementary application of SDCL 23A-35-4.1 disposes of the disclosure issue before us.

[¶19.]     The Implicated Individual feels differently. The contrary argument posits that the judiciary possesses preeminent inherent authority to regulate its records. Accompanying this assertion is the corollary that our rules represent the exclusive means by which records may be sealed. As these claims relate to the particular circumstances here, neither is sustainable.

[¶20.]     To begin, we do not believe that this case implicates the judiciary's inherent authority.[8] It is true, as the Implicated Individual asserts, that we have promulgated rules governing access to court records. Our 2005 adoption of Rule 05-05 represents such an effort. *See* SDCL ch. 15-15A (reprinting Supreme Court Rule 05-05). However, we had no need to act under an imprecise concept of inherent authority. Instead, Rule 05-05 can be directly sourced to our "general superintending powers over all courts" expressly granted under the provisions of the South Dakota Constitution. *See* S.D. Const. art V § 12. Acting pursuant to this explicit grant of authority, we may adopt rules on, among other topics, "practice and procedure and . . . the administration of all courts."

[¶21.]     Beyond this, our rules governing public access to court records, as drafted, do not support the Implicated Individual's theory of unrivaled court authority. Though the Implicated Individual claims that the procedure set out in SDCL 15-15A-13 recognizes a court's discretion to "prohibit public access to

---

8.     We have recognized the existence of the judiciary's inherent authority in limited contexts. *See e.g.*, *SBS Fin. Servs., Inc.*, 2012 S.D. 67, ¶ 13, 821 N.W.2d at 845 ("We have previously held that 'a trial court has the inherent power to reconsider and modify an order any time prior to entry of judgment.'" (quoting *Moore*, 1999 S.D. 152, ¶ 46, 603 N.W.2d at 525 (alteration omitted))); *State v. Guthrie*, 2001 S.D. 89, ¶ 11, 631 N.W.2d 190, 194 ("[C]ourts have inherent power to regulate trial procedure.").

information in a court record[,]" the argument cannot withstand a more complete reading of the rule that requires a court to consider relevant statutory authority:

> A request to prohibit public access to information in a court record may be made by any party to a case, the individual about whom information is present in the court record, or on the court's own motion . . . . The court must decide whether there are sufficient grounds to prohibit access *according to applicable constitutional, statutory and common law*.

SDCL 15-15A-13 (emphasis added).

[¶22.]		Other rules within SDCL chapter 15-15A also contemplate the application of additional authorities, including statutes, to specific access questions. For instance, SDCL 15-15A-5(3) provides, in relevant part, that "[a]n individual circuit or a local court may not adopt a more restrictive access policy or otherwise restrict access beyond that *provided by statute* or in this rule . . . ." (Emphasis added); *see also* SDCL 15-15A-5(1) ("Information in the court record is accessible to the public except and as prohibited by statute or rule and except as restricted by §§ 15-15A-7 through 15-15A-13.").

[¶23.]		In fact, Rule 05-05 conspicuously cites the statute at the center of this appeal, SDCL 23A-35-4.1. In SDCL 15-15A-7(3), we provide an illustrative list of court records that are not available to the public by virtue of "state laws, court rules, or case law . . . ." Included among the litany of 28 examples of court records whose disclosure is prohibited is an "[a]ffidavit filed in support of search warrant (sealed if so ordered by court, see statutory directives); § 23A-35-4.1 . . . ." In other words, our rules contain a strong, if implicit, acknowledgment that only search warrant affidavits may be sealed under the provisions of the statute.

[¶24.] In addition, we have exercised our authority to determine that certain types of information within court records should be redacted in all instances. These include personal identifying information, such as social security numbers, as well as certain financial documents and the names of minor children in particular cases. *See* SDCL 15-15A-8. We perceive no tension between our rules allowing for the limited redaction of this information to protect individual privacy interests and SDCL 23A-35-4.1's requirement to allow access to the broader "contents" of a search warrant. In any event, there is no redaction question before us. The circuit court acted on its own to reconsider its authority to seal the search warrant files, not to determine whether certain discrete information was amenable to redaction under SDCL chapter 15-15A.[9]

[¶25.] Perhaps sensing the intransigency of SDCL 23A-35-4.1, the Implicated Individual foregoes any effort to construe its provisions. Instead, the Implicated Individual claims that applying SDCL 23A-35-4.1 will lead to a host of absurd results. *See People ex rel. J.L.*, 2011 S.D. 36, ¶ 4, 800 N.W.2d 720, 722 (observing that "[a]mbiguity is a condition of construction, and may exist where the literal meaning of a statute leads to an absurd or unreasonable conclusion." (citation

---

9. In the circuit court proceedings below, the State asked the court to redact the captions of the search warrants because they identified the Implicated Individual as a "defendant" when that was, in fact, not accurate and because "disclosure of this information could impede an ongoing criminal investigation." The forms used for the search warrant documents are included in SDCL Title 23A's appendix of forms and, right or wrong, list the individual targeted by law enforcement as a "defendant." Regardless, though, the State dismissed its own appeal, has not participated in this appeal, and has not, in any way, repeated its claims that the failure to redact would impede an ongoing investigation.

omitted)). Given the Legislature's role in determining statutory public policy, our standard for relative absurdity should be high. *See Argus Leader v. Hagen*, 2007 S.D. 96, ¶ 15, 739 N.W.2d 475, 480 ("In construing a statute, we presume 'that the legislature did not intend an absurd or unreasonable result' from the application of the statute." (quoting *State v. Wilson*, 2004 S.D. 33, ¶ 9, 678 N.W.2d 176, 180)).

[¶26.]     Here, the Implicated Individual's arguments suggest only that a plain reading of SDCL 23A-35-4.1 represents unwise—not absurd—public policy. *See* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 237 (2012) ("Something that 'may seem odd . . . is not absurd.'") (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 565, 125 S. Ct. 2611, 2624, 162 L. Ed. 2d 502 (2005). For example, the Implicated Individual claims that reading SDCL 23A-35-4.1's prohibition upon sealing the search warrant and the verified inventory is irreconcilable with the rationale supporting the court's statutory authority to expunge criminal records. *See* SDCL 23A-3-26 to -37. We are not convinced that the prohibition upon sealing search warrant records is irreconcilable with the authority to later seal already-public arrest records. The two subjects are simply different, but regardless, the Legislature is uniquely situated to create a provision for expunging or sealing all search warrant records if its members become convinced the existing rules are unsound.[10]

---

10.     At oral argument, the Implicated Individual suggested that it would have been more advantageous to be arrested in the sense that the expungement remedy would have then been available. However, the argument overlooks the fact that a public arrest would have effectively rendered moot the question we face here relating to the disclosure of the Implicated Individual's identity in the first instance.

[¶27.]      The Implicated Individual otherwise paints a stark picture in which the judiciary must act to assert its supremacy over access to court records so that it can advance certain policy aims, such as protecting the privacy of uncharged individuals named in search warrants and assuring the integrity of criminal investigations. We do not believe that this case presents the need or the opportunity to take ad hoc action to advance the interests the Implicated Individual has identified. It may well be that allowing courts the sole discretion to seal all search warrant records states a better or more pragmatic approach, but this is not the current state of the law. The Legislature has enacted SDCL 23A-35-4.1, and nothing in our current rules conflicts with the statute's provisions. To the contrary, our rules specifically contemplate the role of statutory authority in resolving questions concerning access to court records. We can no more overlook SDCL 23A-35-4.1 than we could ignore binding legal authority in this or any case that comes before us.

[¶28.]      In the end, the application of SDCL 23A-35-4.1 is unavoidable, and it means what it says—a court "may not prohibit disclosure that a supporting affidavit was filed, the contents of the warrant, the return of the warrant, nor the inventory."[11] Under the circumstances presented here, there is no constitutional

---

11.    The Implicated Individual cites a number of cases from other jurisdictions for the proposition that the courts possess primary authority to regulate court records. *See In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.,* 9 F.4th 768, 791 (8th Cir. 2021) (discussing common-law right of access to court records); *People v. Jackson*, 27 Cal. Rptr. 3d 596, 605 (Cal. Ct. App. 2005) (discussing detailed court rules for sealing presumptively open court records). On general principles, we have no quarrel with this thesis, but it adds very little to our discussion here, which involves a unique confluence of

(continued . . .)

collision course between coordinate branches of state government and no tension between our court rules and a plain and unambiguous statute.[12] *See Associated Press v. State*, 888 A.2d 1236, 1256-57 (N.H. 2005) (holding that court rules regulating court records and statutes concerning public access to certain records can "coexist"). The provisions of SDCL chapter 15-15A and SDCL 23A-35-4.1, at least as far as they relate to the issue here, are easily reconciled using the cardinal rule of statutory interpretation—simply read the text and apply it.

---

(. . . continued)

court rules and statutory authority not present in the decisions cited by the Implicated Individual.

12. The Implicated Individual extends the claim that the judiciary possesses inherent and preeminent authority over court records into the constitutional realm by arguing that applying the text of SDCL 23A-35-4.1 as it is written violates the separation of powers doctrine. We do not believe that to be the case. There is no overt conflict between the statute and our rules regarding access to court records, and the most that could be said is that our provincial interest in court records means that allowing the Legislature to have any role in determining access constitutes an embedded delegation of judicial authority or perhaps a subtle encroachment upon it. However, this construct does not signal an actual separation of powers issue, and we are aware of no authoritative rule that prohibits us from considering statutory authority in the determination of particular access to records questions.

***Prospective Application***[13]

[¶29.]     "Generally, unless a court declares otherwise, a decision has both prospective and retroactive effect." *Hohm v. City of Rapid City*, 2008 S.D. 65, ¶ 21, 753 N.W.2d 895, 906. *See also Burgard v. Benedictine Living Communities*, 2004 S.D. 58, ¶ 9, 680 N.W.2d 296, 299 ("Traditionally, the general rule in civil cases was that unless a court declared that its decision was to have only prospective effect, the decision would have both prospective and retroactive effect"). "This general rule arises from the theory that the judiciary does not make law, but rather interprets it." *Burgard*, 2004 S.D. 58, ¶ 9, 680 N.W.2d at 299.

[¶30.]     When considering whether a decision should be applied only prospectively, we have identified three areas of inquiry:

> (1) the decision to be applied prospectively must establish a new principle of law by either, overruling clear past precedent on which litigants have relied, or, by deciding an issue of first impression whose resolution was not clearly foreseen; (2) the court must weigh the merits and demerits of each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further [or] retard its operation; and (3) the court must determine whether the decision would produce substantial inequitable results if applied retroactively.

---

13.    As indicated above, the Implicated Individual first addressed this issue shortly before filing a notice of appeal and prior to a ruling from the circuit court. Though our ability to determine issues on appeal generally requires the existence of an appealable order, we have recognized an "inherent power to apply [our] decisions prospectively or retrospectively." *Burgard v. Benedictine Living Communities*, 2004 S.D. 58, ¶ 9, 680 N.W.2d 296, 299 (quoting *State v. One 1966 Pontiac*, 270 N.W.2d 362, 365 (S.D. 1978)). Consequently, we may consider the Implicated Individual's prospective application argument on the merits even without a final order from the circuit court.

*Larsen v. Sioux Falls Sch. Dist. No. 49-5*, 509 N.W.2d 703, 706 (S.D. 1993) (citations omitted).

[¶31.]    As a threshold matter, the class of cases for which prospective application can even be considered is limited to those decisions that state a new rule. "If the case did not announce a new rule of law, our inquiry ends because 'by definition, without a new rule, there is no change in the law and the question of retroactivity is immaterial.'" *Burgard*, 2004 S.D. 58, ¶ 14, 680 N.W.2d at 301 (quoting *Larsen*, 509 N.W.2d at 706). The unvarnished fact that we address an issue of first impression does not, itself, equate to a new rule. *See Burgard*, 2004 S.D. 58, ¶¶ 15–18, 680 N.W.2d at 301–02. This is particularly true where we confront issues of statutory interpretation:

> When a court is faced with a question of statutory construction, it is not making new law, but rather interpreting existing law . . . . When a prior decision merely applies existing statutory law, it is unnecessary to state that the decision was both prospective and retrospective. This is because the statute was within the codified laws before any judicial decision was announced and as such, it provided a standard of care or conduct from the moment it became law.

*Id.* ¶ 16, 680 N.W.2d at 301 (cleaned up); *see also Baatz v. Arrow Bar*, 426 N.W.2d 298, 300 (S.D. 1988).

[¶32.]    We applied these principles in *Burgard* and determined, as an alternate holding, that our decision in *Peterson v. Burns*, 2001 S.D. 126, 635 N.W.2d 556, would not qualify for prospective-only application because it did not state a new rule. Although our *Peterson* decision held for the first time that a wrongful death action based upon medical malpractice was governed by a two-year limitation period instead of a three-year period, we concluded that this result involved no more

-16-

than interpreting existing statutory law. *Burgard*, 2004 S.D. 58, ¶ 18, 680 N.W.2d at 302.

[¶33.] The same is true here. While we have not previously held that SDCL 23A-35-4.1 prohibits a court from sealing a search warrant or the verified inventory, our determination that it does reflects nothing more than an uncomplicated interpretation of its text. Our decision today does not overrule existing law, and there is no evidence in the record that it alters settled expectations about the state of the law or the meaning of SDCL 23A-35-4.1.[14] This result was, in the words of *Burgard*, "clearly foreshadowed . . . ." 2004 S.D. 58, ¶ 18, 680 N.W.2d at 302. It cannot, therefore, qualify as a new rule, and "it is unnecessary for the Court to engage in analysis of the remaining [prospective application] factors." *Id. Cf. Hohm*, 2008 S.D. 65, ¶ 22, 753 N.W.2d at 906 (holding the decision that municipalities' common law duties concerning streets were abrogated by statutory enactments was a new rule that overruled a significant body of decisional law and was not clearly foreshadowed).

[¶34.] The Implicated Individual makes one final argument, presumably under factor two of the prospective application test, that a retroactive application of SDCL 23A-35-4.1's provisions "to all search warrant court records that have been sealed in the past" will have a disruptive effect on the criminal justice system. As part of the argument, the Implicated Individual cites our decision in *State v. Garcia*,

---

14. The Implicated Individual suggests that the practice of sealing an entire search warrant file is universal throughout the state court system. We do not share the same degree of certainty about this factual assertion and believe that any determination in this regard must be based upon evidence contained in the record.

2013 S.D. 46, 834 N.W.2d 821, but the "disruptive effect" referenced briefly in *Garcia* related to a different kind of retroactivity question—the possibility that retroactivity would impact final criminal convictions. 2013 S.D. 46, ¶ 26, 834 N.W.2d at 825.[15] In any event, the Implicated Individual's contention that the court system will become burdened with requests for existing, often dated, search warrant information seems speculative and unsupported by the record.

## Conclusion

[¶35.] Notwithstanding the skilled advocacy on behalf of the parties, the question we confront here is not a close one. The express provisions of SDCL 23A-35-4.1 control the access to information issue presented in this case, as specifically contemplated by our rules concerning access to court records. There is nothing new or novel about our statutory analysis and conclusion, and there is no justification for restricting the application of our decision to prospective, future cases. We affirm the circuit court's amended orders. With the exception of the affidavits in support of the five search warrants, our current order sealing the Supreme Court clerk's appellate file will be dissolved following the expiration of the time for petitioning for

---

15. In *Garcia*, we considered a retroactivity argument relating to the United States Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), which concerned a defense attorney's obligation to advise clients of potential immigration consequences if they plead guilty to certain types of criminal offenses. The analysis was guided by the Supreme Court's decision in *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), and is different from our framework for determining the question of whether a decision in a civil case may be applied only prospectively. *See Siers v. Weber*, 2014 S.D. 51, ¶ 26, 851 N.W.2d 731, 739–40 (rejecting the argument to apply "the civil retroactivity standard from *Hohm* to the criminal and habeas context").

#29473

rehearing or the resolution of a petition seeking rehearing, provided we do not grant the petition.

[¶36.]     JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.